[Crim. No. 3745. First Dist., Div. Two. Aug. 1, 1960.]

THE PEOPLE, Respondent, v. VICTOR S. SWANSON et al., Appellants.

Leo R. Friedman and Gregory S. Stout for Appellants.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, Thomas Lynch, District Attorney, and Francis Mayer, Chief Assistant District Attorney, for Respondent.

DRAPER, J.—Upon jury verdict finding defendants guilty of grand theft (Pen. Code, §§ 484, 487) judgment ordering imprisonment was entered against each, but execution of sentence was suspended and each was admitted to probation on condition he pay a substantial fine. Both appealed from the judgment, and Swanson appeals also from an order denying his motion for new trial. The prosecution concedes that it relies upon its showing of embezzlement to sustain the judgment.

Swanson was the business manager and Vandewark the treasurer of Operating Engineers Local Number 3, a union having jurisdiction in a substantial part of western United States.

In late February or early March, 1956, Swanson discussed with a salesman for a Salt Lake City automobile dealer the purchase of some automobiles for the union at a price of about $2,600 each. Shortly thereafter, Vandewark took up the negotiations and was given a price of $2,637 for each of seven cars to be purchased by the union. Carbon copies of order slips, showing this price, were given by the salesman to Vandewark. Vandewark discussed with the salesman purchase of a car for himself, but no price was then fixed. Later, the union agent in Salt Lake City telephoned Swanson that the price of each of the seven cars for the union would be $2,637. At about the

same time, the agent told either Swanson or Vandewark that the cost of Vandewark's car would be $2,477.

On March 12, Swanson told the union bookkeeper to draw a check for the cars. There is testimony that Swanson specified the sum of $21,000. Check for that amount was drawn, payable to cash, and was signed by both defendants as well as by the recording secretary. Swanson testified that he then directed Vandewark to take the check ''and make out two checks, one for your car, and one for the Engineers' cars, so we can keep the record straight.'' Vandewark took the check payable to cash, endorsed it at a bank and used it to purchase two cashier's checks, one for $18,459 (seven times $2,637), and one for $2,477. Both cashier's checks were payable to the Salt Lake City automobile dealer. (The $64 by which the $21,000 check exceeds the total of the two cashier's checks is but little discussed in the transcript, and is not material here.) No supporting voucher accompanied the check, although the custom was that a voucher or bill accompanied each check when it was circulated for signature.

Swanson then signed a letter, on union stationery, to the automobile dealer, enclosing the two checks and specifying their amounts. The letter gave delivery orders for each of eight cars, and as to that to be delivered to Vandewark stated ''this is his own personal car.'' Title to that car was issued in Vandewark's name, and the union never was reimbursed for its cost.

Some time later, the union bookkeeper entered the transaction on the union books as a purchase of seven cars for the union at $3,000 each. He testified that Swanson told him that the cars had cost $3,000 each. He also testified that he had made the entries from the order slip copies which had been given to Vandewark by the automobile salesman before the purchase was finally agreed upon. Those slips were produced from the union files. Each of the seven showed a cost price of $3,000. They were admitted in evidence. An expert testified that the slips had been altered, the figures $2,637 having been replaced by the figures $3,000. There is no evidence as to who altered these order slips or who gave them to the union bookkeeper.

Two extrajudicial statements of Vandewark, one made to an investigator for a committee of the United States Senate and one to a deputy district attorney, were admitted in evidence. In them, Vandewark admitted that the check transaction was to permit the union records to show that seven

cars had been purchased for $3,000 each, but said that he had paid the $2,477 for his car to Swanson. This evidence was admitted against Vandewark only.

 Swanson contends that the evidence is insufficient to support his conviction. No issue is raised as to the sufficiency of the evidence to sustain the conviction of Vandewark.

Swanson personally conducted the original negotiation for purchase of automobiles for the union. He knew that seven were to be bought and that they would cost approximately $2,600 each. He knew that the final negotiation fixed the price at $2,637 each. Nevertheless he directed the bookkeeper to prepare a check for $21,000—$2,541 more than required for the union purchase. The check was made to cash, contrary to the usual practice of the union in such purchases. Swanson denies that he noticed this denomination of the payee, but he admits signing the check and the jury could infer his knowledge of what he signed. Swanson told Vandewark to secure two checks, one for the union's cars and one for Vandewark's personal car. Swanson signed a letter to the automobile dealer describing the vehicle which was to be Vandewark's "own personal car," thus assuring that documents of title would be issued to Vandewark, rather than the union. The bookkeeper's testimony gives rise to the inference that Swanson told him to enter the price of the union cars at $3,000 each. Although he also testified that the information for these entries came from the altered order slip copies, the inference that Swanson directed the false entry could be, and doubtless was, accepted by the jury. Swanson argues that the evidence is completely consistent with the view that the transaction was a loan by the union to Vandewark. Swanson's testimony supports this view. But the entries made in the union books are inconsistent with Swanson's claim, and the evidence that they were false, if believed, belies any claim of loan. The jury could reasonably have found that Vandewark and Swanson conspired to misappropriate the value of Vandewark's car from the union.

The elements necessary to prove embezzlement are set forth in *People* v. *Swanson,* 174 Cal.App.2d 453, page 457 [344 P.2d 832]. This case involved the same union and the same Victor Swanson. All these elements could well be found by the jury from the evidence summarized above, and the conclusion that Swanson and Vandewark conspired to embezzle union funds is entirely warranted. It is true that the evidence is largely circumstantial, but that is necessarily true in most conspiracy

428

cases, and such evidence is ample to sustain a verdict (*People v. Robinson*, 43 Cal.2d 132, 136 [271 P.2d 865]).

██ Swanson complains that the instructions were erroneously confusing as they relate to the use against Swanson of acts and declarations of Vandewark. Vandewark did not testify at the trial. However, two extrajudicial statements by him, made in January and March, 1958, were introduced in evidence. These were admitted only against Vandewark. As to both, and as to the testimony of two witnesses called in Vandewark's behalf, the jury was admonished not to consider them against Swanson. In its instructions, the court said that it had "admitted evidence to be considered solely against the defendant . . . Vandewark," and directed that "such evidence, so limited to . . . Vandewark, cannot be considered by you for any purpose at all in considering the guilt or innocence of the defendant . . . Swanson." The jurors were instructed in this connection to "put out of your minds and discard any and all evidence that has only been admitted against the defendant Vandewark."

Some 17 transcript pages later, the court referred to its admission of "evidence of acts or declarations made by one or more of the defendants outside the presence of his co-defendant" and limited application of such evidence to such defendant alone. Then a full and proper definition of conspiracy was given, and the jury was told that "each of the persons forming a conspiracy is liable for every act, and is bound by the acts and declarations of each and all the conspirators, done or made in pursuance or furtherance of the said conspiracy, and continues to be so liable and bound for so long as he remains a member thereof." It was emphasized that "an act which is not in furtherance of the object of the conspiracy" is not within this rule, and no responsibility for such act attaches to a confederate. Termination of conspiracy was defined, and the jury told that "no act or declaration of a conspirator that is committed or made after the conspiracy has been terminated . . . is binding upon his co-conspirators, and they are not criminally liable for any such act or declaration."

Swanson does not suggest inaccuracy in the instructions. He asserts only that they permitted the jury to consider against him the extrajudicial statements of Vandewark which were admitted against Vandewark only. The instructions seem to us to place in one category the evidence which the court had specifically limited to Vandewark alone, and to tell

the jurors that they were not to consider such evidence in determining the case against Swanson, but in that determination to "put (it) out of your minds." Wholly separately, the mass of evidence as to Vandewark aside from his out-of-court statements, (such as his negotiation of prices with the automobile dealer, his taking of title to his car, etc.) were properly admissible as to both defendants if and when the jury found that they were conspirators. The distinction seems to us to have been adequately explained.

If, however, there were any confusion, it is clear that it was not prejudicial to Swanson. The principal harm to him in the extrajudicial statements of Vandewark lies in the latter's assertion that the transaction was a loan of union funds to him, and that he had repaid the amount in cash, to Swanson soon after the union paid the price of the eight cars. Swanson himself testified that the transaction was a purchase by Vandewark "through the union," that he had asked Vandewark whether the latter had paid for his car at about the time the union check was issued, and did not recall whether Vandewark "said he had or he would" pay. If the jury accepted this claim, and believed that Vandewark had paid the amount of that loan to Swanson for the union, it could hardly have found Vandewark guilty of embezzlement. In view of the verdict finding both guilty, it seems clear the jury, if it considered the claim made by Vandewark, rejected it.

Finally, Swanson argues that copies of the order slips made up by the automobile dealer, and the evidence that they had been altered, are inadmissible hearsay. It is true that there is no evidence as to who altered the slips. There is no direct evidence that Swanson ever saw them. However, the alterations made the slips conform precisely to the inaccurate figures which the jury could find Swanson directed the bookkeeper to enter in the books, and there is evidence that the bookkeeper relied in part upon these slips to make the misleading entries. The slips had been originally delivered by the automobile dealer to Vandewark, Swanson's coconspirator, and had then shown a lesser price for each of the seven cars bought by the union. Having contributed to misleading the bookkeeper, they were retained in the union files. They, and the fact of their alteration in precise accordance with other evidence of the means by which the conspiracy succeeded, were relevant evidence as a circumstance tending to show that the transaction was neither mere error nor an open and acknowledged loan, as defendants contended.

Admissibility of the evidence just discussed is the only point raised by Vandewark on this appeal.

Judgment against both defendants, and order denying Swanson a new trial are affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

The petition of appellant Swanson for a rehearing was denied August 22, 1960, and the following opinion was then rendered:

THE COURT.—Appellant Swanson's petition for rehearing asserts that there is no evidence that he told the bookkeeper to enter the price of the union cars at $3,000 each.

But the bookkeeper testified: ''I got the information from Mr. Swanson that there was seven cars'' (R.T. 42). His attention was directed to the time he made the entries in the union books, and he was asked, ''And in your talks with Mr. Swanson about this $21,000 for these cars, his statements to you were that this $21,000 was for the cars going to the union, isn't that right?'' He answered ''Yes, sir'' (R.T. 71). Swanson himself testified of the bookkeeper ''I didn't ask him anything. I told him what to do.'' Asked ''You had complete authority over Mr. Garrett, isn't that right?'' Swanson answered ''Yes. He worked for me, that is, I hired him'' (R.T. 335). We think this evidence alone amply warrants the conclusion, obviously drawn by the jury, that Swanson directed the entries.

The petition of appellant Swanson for a hearing by the Supreme Court was denied September 20, 1960.