[Civ. No. 24985.   Second Dist., Div. One.   Mar. 21, 1961.]

BERNIE SPECHT, Respondent, v. A. H. KEITEL, Appellant.

Irl Davis Brett for Appellant.

Pray, Price & Williams for Respondent.

FOURT, J.—This is an appeal from a judgment dated and filed January 21, 1960, and entered January 25, 1960. The action is in equity to set aside a prior decree by which defendant Keitel, appellant herein, purportedly quieted title to himself in a certain oil royalty interest as against the estate of Clara Fry Farr, deceased, to have defendant account to plaintiff for all royalties theretofore paid; to enjoin Axis Petroleum Company from paying further royalties to appellant; and to quiet title to the royalty interest in plaintiff and have all royalties thereafter ordered paid to plaintiff. Appellant's appeal is from the decree granting relief as requested. The defendant, Axis Petroleum Company, which did not appeal, is the lessor operator of the oil well.

A résumé of the facts is as follows:

Mrs. Clara Fry Farr died on March 25, 1943. On March 19,

1953, Edith A. Davenport was appointed administratrix of the estate of Clara Fry Farr. She was appointed administratrix solely as an accommodation to appellant Keitel in order to enable him to quiet title to the oil royalty interest here involved. On May 6, 1953, appellant Keitel obtained a judgment quieting title in him to said royalty interest.

No useful purpose would be served in setting forth the evidence pertaining to the extrinsic fraud perpetrated by Keitel since, as stated in his reply brief, *"We have conceded that there was evidence to support the conclusion that the quiet title judgment against DAVENPORT was obtained through legal . . . extrinsic fraud and that it could be vacated if SPECHT, as Administrator, has proved that he has a meritorious defense to such action."* Among other things the extrinsic fraud was the statement in the petition for the appointment of Davenport as administratrix that the heirs of deceased were unknown. The heirs of Clara Fry Farr received no notice of the proceedings to probate their mother's estate nor of the quiet title suit. Davenport took no steps to conclude the probate proceedings. At the time of Clara Fry Farr's death her other property interests were in Utah and were distributed to her children. It was not until approximately April 1957 that any of said heirs obtained any knowledge that the oil well in California was producing and oil royalties were being paid. This was a short time before the action herein was filed. The heirs were actually informed when plaintiff herein, Bernie Specht, learned of the royalty and had his attorney contact the heirs in an attempt to purchase their interest.

On January 21, 1957, said heirs assigned to plaintiff by assignment in writing all of their rights as heirs.

Following entry of the decree of quiet title in favor of Keitel on May 6, 1953 (i.e., the decree obtained through extrinsic fraud), the then operator of the oil well, Axis, paid to Keitel accumulated royalties in the sum of $4,422.77 and Keitel also received from Wood-Callahan Oil Company, the prior operators, the sum of $814.63. Through December 1958 the Axis Company held the further sum accrued and unpaid in the amount of $1,244.76.

Other pertinent facts have been incorporated within the body of the opinion itself wherein appellant's various contentions are presented.

I. *Appellant asserts that the court is without jurisdiction to render a judgment in favor of Specht, as administrator,*

*because Specht, as administrator, never paid a filing or appearance fee. There is no merit to the contention.*

On September 20, 1957, "BERNIE SPECHT, Plaintiff . . ." filed a "COMPLAINT TO SET ASIDE A JUDGMENT, FOR INJUNCTIVE RELIEF, FOR DECLARATORY RELIEF, ACCOUNTING AND FOR MONEY HAD AND RECEIVED." On October 24, 1957, defendant A. H. Keitel filed his Answer to the Complaint. On March 10, 1958, "BERNIE SPECHT, Plaintiff . . ." filed a "PROPOSED AMENDMENT TO COMPLAINT" whereby the royalty interest in which defendant had quieted title was more fully described. On January 5, 1959, "BERNIE SPECHT, Plaintiff . . ." filed a "SECOND AMENDMENT TO COMPLAINT." Therein it was alleged in part as follows:

"The First Cause of Action of the complaint herein is hereby amended by adding the following:

"XIII.

" 'That heretofore on the 17th day of January, 1958, Edith A. Davenport was removed as administratrix of the Estate of CLARA FRY FARR in Probate Action No. P 338490 in the above entitled court. That thereafter on January 17th, 1958 in said estate of CLARA FRY FARR No. P 338490 . . . plaintiff was duly issued Letters of Administration, and he has ever since and is now, the duly qualified, appointed and acting administrator of the Estate of CLARA FRY FARR, deceased, *and prosecutes this action in that capacity as well as individually.' "* (Emphasis added.)

By minute order of January 7, 1959, "The court on its own motion orders the filing of a 2nd amendment to the complaint herein and the amendment of the action to show Bernie Specht individually and as administrator of the estate of Clara Frye [*sic*] Fair [*sic*] deceased. The demurrer is is [*sic*] overruled and the motions are denied."

There can be no question that the trial court had authority to permit the amendment of the complaint to the end that plaintiff Bernie Specht could prosecute the action in a dual capacity—i.e., both individually and as administrator of the estate of Clara Fry Farr. As stated in *California Gasoline Retailers* v. *Regal Petroleum Corp.*, 50 Cal.2d 844 [330 P.2d 778] at page 851:

"Section 473, Code of Civil Procedure, provides that 'The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party . . .' . . . The statutory provision relating to amendments to the plead-

ings in the furtherance of justice has received a very liberal construction in the courts of this state (*Klopstock* v. *Superior Court*, 17 Cal.2d 13, 19 [108 P.2d 906, 135 A.L.R. 318]). The amendment to the complaint stated no new cause of action against the defendants, nor did it state any new facts. It does not appear that defendants were prejudiced thereby and the court did not abuse its discretion in permitting the amendment . . .''

█ An amendment to a complaint is deemed to be a statement of the facts existing at the commencement of the action, and takes effect as though it had been originally incorporated in the pleadings. (*Nungaray* v. *Pleasant Valley etc. Assn.*, 142 Cal.App.2d 653, 662 [300 P.2d 285]; *Hibernia Sav. & Loan Soc.* v. *De Ryana*, 210 Cal. 532, 534, 537-538 [292 P. 632]; *Dieckmann* v. *Merkh*, 20 Cal.App. 655, 657-658 [130 P. 27].)

█ Code of Civil Procedure, section 405.5, did not operate to divest the trial court of jurisdiction to render judgment in favor of plaintiff as administrator. Section 405.5 provides in part as follows:

'' [Fee to be paid when person files first paper in civil action or proceeding: Filing paper: Notice of additional fee: Effect of failure to pay fee: Effect of recital of giving notice and nonpayment of fees in clerk's certificate.] Whenever a person *files a first paper* in any civil action or proceeding, he shall pay to the clerk of the court at least the applicable fee prescribed. . . . The clerk shall thereupon file the paper and *if any additional fee is required* by law *shall notify* the party by mailing notice . . . and if the balance of the fee required is not paid within 20 days *thereafter,* the filing shall be ineffective for all purposes. . . .'' (Emphasis added.)

The filing fee was paid when ''BERNIE SPECHT, plaintiff'' filed the complaint. The complaint was the ''first paper'' in the civil action. The amendment to the pleading, as set forth above, takes effect as though it had been originally incorporated in the pleading. Even if some additional fee was required, section 405.5 requires the clerk to notify the party of such fact, and the party has 20 days thereafter to pay the balance of the fee. There is no evidence in the record that the required notice was ever sent to plaintiff.

II. *Appellant further asserts that the court erred in determining that the royalty interest did not belong to Keitel and did belong to Specht, as administrator. We think there was no error.*

As stated by respondent, "Basic to the case at bar is the question of whether the defendant Keitel owned the royalty or whether it belonged to Clara Fry Farr during her life and upon her death thereafter devolved upon her heirs."

The two modified findings of fact pertinent to the issue of ownership provide in part as follows:

"I

"That Clara Fry Farr died on March 25, 1943, in the County of Los Angeles, State of California; *that at the time she was the owner of that certain royalty interest described as follows: . . .*" (Emphasis added.)

"VI

*"That the defendant A. H. KEITEL has not now, and has never had any right, title or interest in and to the royalty described herein;* that except for the action of said EDITH A. DAVENPORT in defaulting in Action No. 612109, defendant A. H. KEITEL had no title to said royalty and no rights thereto, and could not have obtained a judgment quieting title in his favor . . ." (Emphasis added.)

In attempting to show error, appellant sets up a res judicata straw man by stating:

"Another foundation for the Court's decision that the royalty interest does not belong to Keitel and does belong to Specht, *as Administrator* (appellant's emphasis), which was urged during the course of the trial, *but as to which the Court made no express finding and drew no express conclusion* (emphasis added), was the contention that the judgment in LBC 5484 (i.e., the original quiet title action in which both Keitel and Mrs. Farr were parties and which quieted title to the royalty interest in issue), once it became final, became *res judicata* (appellant's emphasis) to any claim of Keitel to the royalty interest conveyed in Exhibit 6. *If the decree from which this appeal is taken is to be interpreted as being supported by a finding in favor of such contention, such finding is erroneous and such support for the judgment herein, is untenable.* This is so because (1) Keitel acquired the interest after LBC-5484 had been commenced, and (2) Keitel never intervened or pleaded as to the Farr interest in that case." (Emphasis added.)

While respondent relied upon the judgment rendered in 1935 there is nothing to indicate that the basis for the trial court's determination is predicated upon Keitel's being estopped to assert his purported interest by virtue of the judgment in Action Number LBC 5484.

Viewing this case in its true perspective, Keitel's purported ownership of the royalty is dependent upon the fact that Mrs. Farr *was* the owner of the royalty interest; his claim of ownership being based upon Mrs. Farr, as owner, assigning her rights to Keitel. There is nothing in the findings to indicate that the court relied upon res judicata as an estoppel. The pivotal question is whether the purported assignment under which Keitel claims title is valid.

In support of appellant's contentions with reference to the validity of the assignment, appellant cites several presumptions which would support his position.[1]

It is of course established in this state that presumptions are evidence; are sufficient to create a conflict in the evidence; and will support a finding of fact even in the face of uncontradicted conflicting testimony produced by the adverse party. (*Henderson* v. *Drake,* 118 Cal.App.2d 777, 787 [258 P.2d 879].)

The presumptions contained in Section 1963 of the Code of Civil Procedure are ''denominated disputable presumptions, and *may be controverted by other evidence.*'' We must keep in mind, however, that the question on appeal is not whether there is evidence in the record which would have supported appellant's contention, but whether there is substantial evidence in the record which supports the judgment in favor of respondent.

Ordinarily it is for the trial court or jury to determine if the evidence against the presumption is sufficient to rebut it. (*Steward* v. *Paige,* 90 Cal.App.2d 820, 824 [203 P.2d 858]; *McDonald* v. *Hewlett,* 102 Cal.App.2d 680 [228 P.2d 83, 24 A.L.R.2d 1281].)

In rebuttal of defendant's claim of ownership under the purported assignment of 1934, plaintiff introduced the following evidence, namely : testimony of two of the deceased's children that the signature appearing on the purported assignment was not that of their mother; testimony of a handwriting expert that, based upon certain acknowledged exemplars, some of which were executed prior to and some subsequent to the purported assignment of 1934, it was his opinion that the signature appearing upon the purported assignment was a copy; the actions of decedent Clara Fry Farr at times subsequent to the purported assignment—she continued to receive royalties and to endorse and cash the royalty checks; the

[1]Code of Civil Procedure, § 1963, subdivisions 1, 8, 19, 20, 28, 33 and 39.

conduct of defendant himself in not recording the document or otherwise treating it as being of any significance and in executing documents in 1936 by which he termed himself only as trustee for Clara Fry Farr and not as the owner of the interest.

While defendant was not under any legal obligation to record his purported interest (*Chaffee* v. *Sorensen,* 107 Cal.App.2d 248, 289 [236 P.2d 851]), nor was it necessary for title to the royalty interest to be quieted in him instead of the deceased in the 1934 action, nevertheless, the trier of fact is permitted to draw inferences from all of the above circumstances.

As recently stated in *Coutts* v. *Grant,* 184 Cal.App. 2d 255 at page 257 [7 Cal.Rptr. 431]:

''Conflicts in the evidence, conflicting interpretations thereof and conflicting inferences which reasonably may be drawn therefrom present *issues of fact* for determination by the trier of fact, who 'is the sole judge of the credibility of the witnesses'; may 'disbelieve them even though they are uncontradicted if there is any rational ground for doing so'; and, in the exercise of a sound legal discretion, may draw or may refuse to draw inferences reasonably deducible from the evidence. [Citations.] (Emphasis added.)

In connection with the testimony of Bradford, plaintiff's handwriting expert, appellant asserts that the trial court erred in refusing Keitel's request for a continuance of one week in order to enable him also to obtain a handwriting expert to controvert the testimony of the plaintiff's expert witness.

The granting or refusal to grant a continuance is a matter within the discretion of the trial court. For such to constitute error, the trial court's action must constitute an abuse of its discretion. (*Slaughter* v. *Zimman,* 105 Cal.App. 2d 623, 624 [234 P.2d 94]; *Beck* v. *Reinholtz,* 138 Cal.App. 2d 719, 722 [292 P.2d 906].)

The reporter's transcript discloses the following:

''Mr. Brett: I am not going to object to the qualification of this witness. I would like to ask a couple of questions on voir dire as to the matter of whether he can testify at this *state.*

''The Court: Well, if he is qualified, is there anything else?

''Mr. Brett: Why wasn't Mr. Bradford called yesterday, because they [i.e., plaintiff] have submitted their case. This would not be rebuttal. This would be reopening their case.

If they want to reopen their case, then I request a continuance for a week to get a handwriting expert.

"THE COURT: There is no occasion for any voir dire examination. You can cross-examine.

"MR. BRETT: At this time, then, I will object to the handwriting expert testifying on the ground that it is not rebuttal and is a presentation of their original case on which they have rested; on the further objection that they themselves sponsored and introduced in evidence the exhibit, which apparently they seek to attack, and they are in no position to do that.

"THE COURT: The objection will be overruled. You may proceed."

Several pages later the transcript provides:

"MR. BRETT: . . . It appears from the witness' testimony that the witness had before him and apparently had examined and apparently was to be a witness at least six months before this trial. He was not produced until the plaintiff rested. No request for a continuance was made. No explanation was made as to why he was not produced. Therefore, it is not proper rebuttal and *it is surprise to the defendant,* for which he and his counsel are not prepared. I request a continuance of approximately ten days in order to prepare. (Emphasis added.)

"THE COURT: *The pretrial order in this case recites that it is claimed that these documents are forged, so there is no ground for any claim of surprise. . . .*" (Emphasis added.)

Two pages later the transcript provides:

"THE COURT: I have not yet ruled on any request for a continuance. I have only ruled upon your objection to the questions asked of this witness.

"In the first place, you have taken the position that the Court was in error in admitting these documents. If they were not proper on re-direct examination, then they are properly part of the rebuttal. And now that the plaintiff is putting in the part that you think is rebuttal, I think it is inconsistent for you to take the attitude that it should be part of the case in chief.

"*I see no ground for anyone to express surprise when the pretrial order explicitly states it is claimed that these documents are forged.* As a matter of fact, I made a mental note that if both parties rested without the handwriting expert, I was going to make some inquiry as to why, *because when it is claimed that the documents are forged, the most natural*

*and expected thing, and it is what the Court expects, that an expert handwriting witness be brought in rather than just submit the documents to the Court to be analyzed for determination of that question.''* (Emphasis added.)

When plaintiff rested after putting on his rebuttal, the transcript discloses the following:

"THE COURT: Anything further?

"MR. BRETT: Nothing, except that I do not want to rest. I want to respectfully ask the Court for a continuance of at least 10 days for the purpose of securing a handwriting expert who will make a report to the Court.

"(Argument by counsel in regard to motion for continuance, not transcribed.)

"THE COURT: The request for a continuance will be denied. I am impressed that from the type of pleadings and clearly from the type of the pretrial order *that everyone was on notice that there was a claim of forgery in this case.* In view of those circumstances, no one can be taken by surprise by the production of an expert witness. As a matter of fact, it surprised me the other way around, if there would have been no expert witness.

*"In view of the fact that at the time of the pretrial order the plea was made that the defendant was not ready, it seems to me that there has been enough continuances and it would be almost an abuse of discretion to continue it further.* The request will be denied." (Emphasis added.)

On *April 2, 1958,* the deposition of Irene Lawrence was taken in Ogden, Utah. She is a daughter of the deceased, Clara Fry Farr. The deposition was read into evidence at the trial. Part of the matter covered in the deposition was whether her mother's signature appeared on several documents, one of which was a photostatic copy of the purported assignment. The transcript discloses the following:

"THE COURT: The only question we have reached so far is, 'Is this your mother's signature?' It seems to me there is no objection. The objection is overruled now. You may renew it later. . . .

"THE COURT: I am going to sustain an objection on that ground now [i.e., no foundation]. That could have been asked at that time . . .

"MR. PRICE (reading): . . .

"A. *In my opinion this isn't mother's signature.''* (Emphasis added.)

It would serve no useful purpose to set forth further por-

tions of the transcript. Suffice it to say, the record more than negates any contention of "surprise." The trial court did not abuse its discretion.

III. *Appellant further contends that the trial court erred in finding that Specht, as administrator, was not barred by laches.*

It is stated in appellant's reply brief in part as follows: "We have conceded that there was evidence to support the conclusion that the quiet title judgment against DAVENPORT was obtained through *legal* (though not intended) *extrinsic fraud* and that it could be vacated if SPECHT, as Administrator, has proved that he has a meritorious defense to such action." (Emphasis added.)

The finding of fact challenged is Finding XVI which provides as follows: "That the plaintiff, BERNIE SPECHT, individually and as Administrator of the Estate of Clara Fry Farr, deceased, and/or his predecessors in interest, are not guilty of laches and that the action herein was instituted promptly upon learning of the facts involved."

What was stated in 18 California Jurisprudence 2d, Equity, section 37, pages 204-205, is pertinent. Therein, it is provided in part:

"[The doctrine of laches] is neither technical nor arbitrary; and it is not designed to punish a plaintiff, despite the fact that he may have been negligent. On the contrary, *it may be invoked only where a refusal to do so would permit an unwarranted injustice to be done to the defendant*; and *it cannot be used to protect a party who has committed a fraudulent act.* Its purpose, instead, is to shield an *innocent party* from harm." (Emphasis added.)

It is to be remembered that the record title to the royalty interest was in the decedent, Clara Fry Farr, until 1953, at which time appellant, by the exercise of admitted extrinsic fraud, quieted title in himself. Defendant's course of conduct leaves little room to conclude that by denying the defense of laches, he is being subjected to an "unwarranted injustice."

An examination of the whole record discloses that appellant's other contentions, by the various determinations heretofore made, have been disposed of. For the reasons stated the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.