[Crim. No. 1814.   Fourth Dist.   Nov. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK MARRONE, Defendant and Appellant.

Thomas E. Sharkey, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant and appellant Frank Marrone was indicted by a grand jury, with six others, charging in count one that they kidnaped one Antonio Alessio for the purpose of obtaining ransom, in violation of Penal Code, section 209. Count two charged the same defendants with conspiracy to commit the crime of kidnaping for the purpose of obtaining ransom. Seven overt acts are charged. In addition, defendant Marrone was charged with a prior conviction of four felonies: robbery, escape, forgery and murder. Defendant Marrone admitted the previous convictions and was found guilty on both counts. He was sentenced to prison, sentences to run concurrently. He now appeals from the judgment and order denying new trial.

### FACTS

The record comes to us with an agreed statement of facts indicating that Antonio Alessio (called Tony) was a price maker at the Caliente Race Track in Tijuana; that about 5 p.m. on November 22, 1960, four men, including defendant Marrone, drove to the vicinity of the residence of Antonio Alessio and waited for him to return from work. They had in their possession two revolvers, a pair of handcuffs and a pair of sunglasses which had dark paint smeared on the lenses. Alessio arrived at his home, drove his car into his driveway and as he did so Robert Gorman and Richard Hoffman approached Alessio's car, one on each side, and forced Alessio at gunpoint to move to the middle of the front seat. They put the sunglasses over Alessio's eyes and put the handcuffs on his wrists. They drove to a house at 4151 51st Street, San Diego, which had been rented by the kidnapers on November 21 as a place to hold the kidnap victim until the ransom money was paid by the victim's family. Defendant Marrone and one Leroy Gavigan followed in another car. Upon arrival at the house, Hoffman and Gorman took Alessio into it; Hoffman, after removing approximately $600 from Alessio's pockets, left the house and drove Alessio's car to a place some distance from the house where he abandoned the vehicle and proceeded on foot to the downtown area.

Marrone and Gavigan subsequently met Hoffman at the Tropics Bar and placed a prepared ransom note behind the coin drop of a telephone; Marrone then telephoned Mrs. Alessio and told her that her husband had been kidnaped and that she was to proceed to the Tropics Bar where she would find a note in the telephone booth; Marrone then told Hoffman to watch at the bar to see that Mrs. Alessio picked up the note. Mrs. Alessio proceeded to the bar as instructed and found the ransom note, which was addressed to ''Mrs. Alessio and brothers, Russ and Johnny.'' It demanded $650,000 and stated, among other things, that:

''If the money is sprayed, marked or anything like that, well you know what then??? His head will be mailed to you in a box. . . .''

The note also indicated that considerable amount of planning had been done to effect the kidnaping. Frank Marrone's fingerprint was found on the ransom note. The kidnapers had several telephone conversations with the Alessio family during the day and on November 23 at 6:45 p.m. Mrs. Alessio received a telephone call telling her that if $200,000 was left at a parking lot in Los Angeles by 10 p.m., her husband would be released by midnight. She told the caller that John Alessio would bring the $200,000 cash to Los Angeles in accordance with the kidnapers' instructions. Certain defendants drove to Los Angeles, went to the parking lot where the ransom money was to be left, and saw John Alessio drive into the lot at 10 p.m. John Alessio left his car and entered a restaurant as instructed. Gorman then went to Alessio's car and removed a duffel bag containing the ransom money. After opening the bag and observing that the money was there, Gorman went to a telephone about two blocks from the hotel and telephoned his wife, Ruby, who was waiting at a telephone near the Cozy Inn Motel in San Diego. He told her that he had the ransom money. Upon receiving the call from Robert Gorman, Frank Marrone and Ruby Gorman left the motel and left Antonio Alessio handcuffed and tied in the cabin. Marrone discarded his gun in a used car lot, telephoned Mrs. Alessio and told her where her husband could be found. Agents of the Federal Bureau of Investigation proceeded to that place and released Alessio. On the morning of November 24, Gorman and Marrone split the ransom money, Marrone taking $120,000 and Gorman, $80,000. Marrone hid about $100,000 of the ransom money in the panel of the door of the refrigerator in the apartment

which he last rented. At the time of his arrest, Gorman had $77,900 of the ransom bills in his possession. Marrone told officers that he was the person who had planned the kidnaping and that he wanted to surrender himself. Other defendants were arrested.

At the trial, Marrone was positively identified as one of the kidnapers. In testifying in his own behalf, he stated that he recruited the several people who participated in the kidnaping; that he placed the ransom note in the telephone booth at the Tropics Bar; that he telephoned Mrs. Alessio and told her that her husband had been kidnaped and told her to get the ransom money if she wanted to see her husband again; that he was present when Alessio was seized at gunpoint by Hoffman and Gorman; that he arranged for the hideouts where Alessio was held until the ransom money was paid; that he guarded Alessio with a gun during the day and part of the night of November 23; that he divided the ransom money with Gorman; that he rented four different apartments in a period of five days to avoid detection and apprehension; that he hid the $100,000 in the panel of the refrigerator; that he made several statements to the F.B.I. agents and police officers in which he admitted his guilt of the kidnaping of Antonio Alessio; that he disposed of about $17,000 of the ransom money, but refused to disclose the manner in which he disposed of it.

In his testimony, however, Marrone claimed that everything up to the point of his flight and concealment was done in accordance with an arrangement he had with the victim, Antonio Alessio, whereby Alessio consented to the kidnaping, with the understanding that he (Alessio) was to receive a share of the ransom money received. He testified that he did not inform any of his codefendants that he had any arrangement or understanding of any nature with the victim, Antonio Alessio, or that Alessio had consented to being kidnaped. He testified that he had met Alessio in the summer at the race track, but he was unable to recall any specific date.

The victim, Antonio Alessio, testified that he had never seen Frank Marrone or had contact of any kind with him prior to November 22, 1960, that at no time had he ever had any agreement or understanding with him concerning the kidnaping, and that he had never consented to being kidnaped. Defendants Ruby Gorman, Robert Gorman and Frank Marrone were convicted by the jury of the crime of kidnap-

ing for the purpose of obtaining ransom money and of the crime of conspiracy to commit the crime of kidnaping for the purpose of obtaining ransom. Defendant Richard Hoffman withdrew his plea of not guilty and pleaded guilty to the crime of kidnaping for the purpose of obtaining ransom immediately after the jury retired for deliberation. After defendant Hoffman pleaded guilty to the count of kidnaping for the purpose of obtaining ransom, the trial court, on motion of the district attorney, dismissed the count of conspiracy to commit kidnaping for the purpose of obtaining ransom against defendant Hoffman. Prior to the beginning of the trial, defendant Leroy Thomas Gavigan pleaded guilty to the crime of kidnaping and at the trial of the other defendants he testified as a witness for the People. He said that at no time during the planning of the kidnaping of Antonio Alessio with Marrone and the other defendants, did Marrone tell him that the victim had consented to the kidnaping or that any agreement or understanding of any kind existed between Marrone and Alessio concerning the kidnaping. Gavigan testified that he knowingly conspired with the defendants and with them committed the kidnaping for the sole purpose of obtaining a share of the ransom money. Defendants Selma Marrone and Richard A. Clavesilla were each acquitted of the crime of conspiracy to commit the crime of kidnaping for the purpose of obtaining ransom and of the crime of kidnaping for the purpose of obtaining ransom.

The principal question raised on this appeal is the propriety of an instruction given by the trial court to the effect that if the jury should accept the testimony of Frank Marrone as to the existence of such an agreement between himself and Antonio Alessio, then:

". . . if you should find after a consideration of all of the evidence that Leroy Thomas Gavigan, Robert James Gorman, Richard Lee Hoffman, Ruby Elaine Gorman, Selma Marrone, and Richard A. Clavesilla, or any two or more of them, were parties to an understanding or agreement to commit the crime of kidnaping Antonio Alessio for ransom, and if you should find that any one of the parties to such agreement or understanding did any of the overt acts which the indictment alleges that such party to said understanding or agreement performed, and should you find that such act was performed by such party to such understanding or agreement, pursuant to and in furtherance of such understanding or agreement, then you would be justified in finding that all of the elements

of the crime of conspiracy to kidnap for ransom existed. And if convinced, beyond all reasonable doubt, that any one of said five named defendants . . . was a party to such conspiracy, you would be justified in finding that defendant guilty of the crime of conspiracy to kidnap for ransom as charged in count 2 of the indictment.

"Further, if you should find that any one of said five named defendants is guilty of the crime of conspiracy to kidnap for ransom, as charged in count 2 of the indictment, and if you should further find that the defendant, Frank Marrone, knew of the existence of such conspiracy and of its purpose, and if you should find that during the existence of such conspiracy and that at a time when said Frank Marrone knew of the existence and purpose of said conspiracy, he knowingly and with criminal intent performed any act intended to further the purpose of said conspiracy and thereby aided or promoted the commission of the crime of conspiracy to kidnap for ransom, you would be justified in finding the defendant, Frank Marrone, guilty of the crime of conspiracy to kidnap for ransom as charged in count 2 of the indictment, provided that you are convinced, beyond all reasonable doubt, of his guilt of that offense; that is, even if you should believe the testimony with regard to the claimed agreement between himself and Antonio Alessio.''

The court then specifically instructed the jury that when one, in the exercise of his own free will and with knowledge of what is taking place with respect to his person, voluntarily and willingly consents to accompany another, the latter cannot be guilty of kidnaping the former so long as such condition of consent exists. The court then said that such an instruction was given to the jury because of the testimony of the defendant Frank Marrone that he and Antonio Alessio had entered into an agreement that there should be a simulated kidnaping of Alessio, and that if the jury accepted the testimony of defendant Frank Marrone that there was such an agreement between himself and Antonio Alessio, and that Alessio was a willing participant in the simulated kidnaping, then the jury should not find any defendant guilty of the crime of kidnaping for ransom, as the court defined it, or of kidnaping at all.

In reference to the given instruction insofar as it pertained to the defendant Frank Marrone only, to the effect that during the existence of such claimed conspiracy he performed any act intended to further the purpose of the conspiracy,

he would be guilty of conspiracy even if the jury should believe the testimony with regard to the claimed agreement between himself and Antonio Alessio, such instruction appears to be erroneous.

Penal Code, section 182, states that:

"If two or more persons conspire:

"1. To commit any crime.

". . . . . . . . . .

"They are punishable as follows:

". . . . . . . . . .

"When they conspire to commit any other felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of the said felony."

Section 183 provides: "No OTHER CONSPIRACIES PUNISHABLE CRIMINALLY. No conspiracies, other than those enumerated in the preceding section, are punishable criminally."

See also 5 California Jurisprudence section 8, page 504, where it is said: "The code provides that no conspiracies, other than those mentioned in section 182 of the Penal Code are punishable criminally. At common law certain conspiracies are said to have existed before any statutory enactment on the subject. It is obvious that no such condition could prevail under modern laws. It seems to have been regarded as necessary, however, to make it clear by the enactment of section 183 of the Penal Code that the commission, or attempt to commit by concerted action of two or more persons, of any crime other than those specifically described in, or comprehended within the meaning of section 182 of the code cannot be punished as a conspiracy."

The gist of the offense of conspiracy is the formation of a combination with others to do some unlawful act or some lawful act by unlawful means. Conspiracy is a separate and distinct offense from the crime which is a substantive object of the conspiracy. (*People* v. *Augusto,* 193 Cal. App.2d 253 [14 Cal.Rptr. 284].) Conspiracy is not synonymous with aiding or abetting or participating; it implies an agreement to commit a crime, while to aid and abet requires actual participation in the act constituting the offense. A conspirator does not have to participate in the crime conspired. *(People* v. *Malotte,* 46 Cal.2d 59, 60 [292 P.2d 517].)

In *People* v. *Drake,* 151 Cal.App.2d 28 [310 P.2d 997] (hearing denied), this court held that common design is the essence of conspiracy, and the crime can be committed whether or not the parties comprehend its entire scope, whether they

act in separate groups or together, or whether they act by the same or different means known or unknown to some of them, if their actions consistently lead to the same unlawful result. That case was a prosecution for conspiracy to violate narcotics laws. In one count, the defendant was charged with conspiring to violate Health and Safety Code, section 11501, by encouraging another to violate section 11556 thereof, which section had been declared to be unconstitutional. This court held that, that section being unconstitutional, there can be no criminal conspiracy to violate a statute which does not state a crime or public offense.

In *People* v. *Hanselman*, 76 Cal. 460 [18 P. 425, 9 Am.St. Rep. 238], it is said that as a general proposition larceny is not committed when the property is taken with the consent of its owner. In the instant case, the trial court instructed the jury that if the victim and the defendant Marrone consented to and simulated the crime of kidnaping, the defendant Marrone could not be convicted of the crime of kidnaping. This is no doubt the accepted rule.

In Harno, *Intent in Criminal Conspiracy* (1941), 89 University of Pennsylvania Law Review, page 624, at page 637, the writer recites as a recognized rule that: "When the charge is for criminal conspiracy, it is said to be essential that the purpose of the conspiracy be alleged and that the averment show that that purpose was one for which it is criminal to agree."

In *People* v. *Mader*, 313 Ill. 277, 285 [145 N.E. 137, 140], the court declared that: "It is not sufficient to sustain a conviction on a particular charge to prove that the defendant is guilty of some other charge or of generally bad and criminal conduct, but the proof must establish his guilt of the particular charge in the indictment."

The prosecution must show that the accused intended to do an unlawful act. ▮ It therefore appears that if Frank Marrone and the victim, Antonio Alessio, entered into an agreement to simulate the kidnaping of the victim for the purpose of ransom, it not being an offense, the agreement and acts of the defendant Marrone would not amount to a conspiracy to commit the act charged. Whether this rule applies to the remaining coconspirators who had no knowledge of such agreement or simulated offense is not before us for determination on this appeal. We therefore purposely omit any decision in reference thereto.

▮ The next question presented is whether this error

was prejudicial to defendant Marrone and whether it should cause a reversal of his conviction on the conspiracy count.

We are convinced that the jury did not believe the testimony of defendant in reference to any feigned or simulated kidnaping of the victim. This was apparent from its finding of guilt on the first count after the court had instructed that it could not convict if it found the testimony of the defendant to be true in this respect. We are authorized to consider this fact. (*People* v. *Swanson,* 183 Cal.App.2d 424, 429 [6 Cal. Rptr. 599] ; *People* v. *Theodore,* 121 Cal.App.2d 17, 32 [262 P.2d 630].)

Article VI, section 4½, California Constitution, provides: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

*People* v. *Watson,* 46 Cal.2d 818, 834-838 [299 P.2d 243], appears to answer the question. ▮▮▮ There, it was held that a "miscarriage of justice," within the purview of Constitution, article VI, section 4½, should be declared only when the court, after an examination of the entire case, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. ▮▮▮ We are of the opinion, after examining the entire case, including the evidence and the finding of the jury on the kidnaping charge under the instruction there given, that it is not reasonably probable that a result more favorable to the defendant Marrone would have been reached in the absence of the error claimed.

Under article VI, section 19, California Constitution, after advising the jury that the court was authorized, within proper bounds, to comment on the evidence and the credibility of any witness, and cautioning the jury that it was its right and duty to exercise its independent judgment in weighing the comments of the judge on the evidence and to keep in mind that the jury was the exclusive judge of the credibility of the witnesses and of all the facts submitted to it, the court made certain comments on the evidence. ▮▮▮ The trial judge announced that he would proceed to point out certain undisputed evidence. He proceeded to point it out generally and during these comments counsel for defendants pointed out certain testimony in reference to dates, etc., and the correction

was immediately made by the judge. At the conclusion, the court remarked that as to the kidnaping charge, the jury might reasonably conclude that there was a kidnaping for ransom, if the jury believed the testimony of the witnesses; but whether it did draw that conclusion was for the jury to determine. The trial court then proceeded to discuss the conflicting testimony of the several witnesses, mainly the question of the truth of the testimony of defendant Frank Marrone indicating that he and Antonio Alessio had agreed that a kidnaping would be simulated, as opposed to the other testimony on the subject. The trial court then said that such an agreement would be a corrupt, illegal and criminal act, but neither Marrone nor Alessio was charged with such a conspiracy to commit such a crime and neither could be found guilty in this proceeding of such a charge. However, in passing, the jury could consider as evidence that Alessio was presumed innocent of such a crime; that it was only a disputable presumption and would not overcome the presumption of innocence which attaches to the defendants in a criminal case. Exception was taken to this by defendant's counsel. The trial court then pointed out certain evidence which he said the jury might or might not consider as significant. The trial judge then commented on certain testimony in reference to the question whether a conspiracy had been established. At the close of these comments, counsel for defendant Marrone objected, claiming the court had stated the undisputed evidence which was favorable to the prosecution but had failed to state certain undisputed evidence on behalf of the defendants from which the jury might reasonably draw an inference in favor of defendants. (Citing *People* v. *Hooper,* 92 Cal.App.2d 524 [207 P.2d 117]; *People* v. *Huff,* 134 Cal.App.2d 182 [285 P.2d 17].)

The court was satisfied with its relation of the facts and inferences that might be drawn from them. It definitely told the jury that it was the exclusive judge of the credibility of the witnesses and of all questions of fact submitted to it; that the trial court's comments were for the sole purpose of aiding the jury in arriving at a verdict and not to impose its will upon the jury or to compel a verdict.

It is the general rule that the court, in commenting on the evidence, is not required to sum up all the evidence, favorable and unfavorable, or to comment on the testimony of every witness in the case. (*People* v. *King,* 30 Cal.App.2d 185 [85 P.2d 928].) If the court attempts to review the testimony as an appraisal of the entire case, the court should

include the evidence in favor of the defendant as well as that against him. (*People* v. *Gosden*, 6 Cal.2d 14 [56 P.2d 211].) However, as held in *People* v. *Scott*, 53 Cal.2d 558 [2 Cal.Rptr. 274, 348 P.2d 882], there is no hard and fast rule determinative of what a trial judge may or may not say to a jury in commenting on the evidence and the credibility of the witnesses; that rather, each case must necessarily turn upon its own peculiar circumstances; that while the court's power to comment on the evidence, of course, is not unlimited, and the court must be temperate and dispassionate in its remarks, its comment is not confined to a colorless recital, by way of summing up the facts. (Citing cases.) It is settled that a judge may restrict his comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony, both favorable and unfavorable. (*People* v. *Friend*, 50 Cal.2d 570, 578 [327 P.2d 97]; *People* v. *Ottey*, 5 Cal.2d 714, 728 [56 P.2d 193]; *People* v. *De Moss*, 4 Cal.2d 469 [50 P.2d 1031]; *People* v. *Wellman*, 141 Cal.App.2d 101, 106 [296 P.2d 82]; *People* v. *Garcia*, 124 Cal.App.2d 822, 830 [269 P.2d 673].) It was held in *People* v. *Friend*, *supra*, 50 Cal.2d 570, that any statement to the contrary in *People* v. *Hooper*, *supra*, 92 Cal.App.2d 524, 531, relied upon by defendant; *People* v. *Mason*, 72 Cal.App.2d 699, 711 [165 P.2d 481]; *People* v. *Talkington*, 8 Cal.App.2d 75, 99 [47 P.2d 368]; *People* v. *O'Donnell*, 11 Cal.2d 666, 671 [81 P.2d 939]; were disapproved. See also *People* v. *Robinson*, 73 Cal.App.2d 233, 237 [166 P.2d 17]; *People* v. *Rupp*, 41 Cal.2d 371, 383 [260 P.2d 1].

The trial judge's remarks in no way indicated which way his sympathies lay in the instant case. His stating of the factors which the jury might consider in deciding whether defendant or Mr. Alessio told the truth were all fair and logical. Suffice to say, we have read the entire evidence and the comments of the court. We conclude from it and the agreed statement of facts above related that it was a fair relation of the evidence. The five-weeks trial consumed many pages of transcript and the jury heard all of it and was told to consider only the evidence produced, independent of the court's comments. No prejudicial error resulted.

The complaint that the trial judge erred in informing the jury in his comments that it could be *presumed* that Alessio was innocent of the crime or wrong, as being incompatible with the presumption of innocence which attached to defendant Marrone throughout the trial, is untenable. Defend-

ant claims this instruction shifted the burden to defendant to prove that Alessio was not telling the truth.

It has been held that presumptions are evidence and are applicable to criminal actions when the facts warrant it, and where application of the presumption does not arbitrarily determine the case or prevent the jury from making an independent investigation of the issues. (*People* v. *Agnew*, 16 Cal. 2d 655, 662 [107 P.2d 601] ; *People* v. *Hewlett*, 108 Cal.App. 2d 358, 375 [239 P.2d 150] ; *People* v. *Benford*, 53 Cal.2d 1, 13 [345 P.2d 928] [see footnote].) The trial judge gave the usual instructions on the presumption of innocence and the requirement of reasonable doubt. He in no way implied that the requirement of reasonable doubt was outweighed by the presumption of innocence that attached to Antonio Alessio. He stated that the presumption relating to Alessio was a disputable presumption, and pointed out that it would not need evidence which convinced beyond all reasonable doubt to overcome it. Under the circumstances, the jury could not have been led to believe that defendant Marrone had the burden of proving his innocence. No prejudicial error resulted. (*People* v. *Graham*, 191 Cal.App.2d 521, 532 [12 Cal.Rptr. 893] ; *People* v. *Theodore*, *supra*, 121 Cal.App.2d 17, 28 ; *Alford* v. *Bello*, 130 Cal.App.2d 291, 294 [278 P.2d 962] ; *Specht* v. *Keitel*, 190 Cal.App.2d 332, 339 [12 Cal.Rptr. 95].)

The court, in its comments in speaking of corroboration, instructed the jury that defendant Gavigan was an accomplice, and said :

"If the crime of conspiracy to commit the crime of kidnaping for ransom or the crime of kidnaping for ransom, the commission of which is alleged in the indictment, was committed by anyone, then, under the evidence in this case and as a matter of law, the witness Frank Marrone was an accomplice."

Defendant Marrone claims error in this respect. It is the duty of the trial court to give some form of accomplice instructions in reference to corroboration when their testimony is utilized against any other defendant. *(People* v. *Barclay*, 40 Cal.2d 146, 151 [252 P.2d 321] ; Pen. Code, § 1111.) See also *People* v. *Huling*, 71 Cal.App. 144 [234 P. 924] ; 11 Cal.Jur.2d § 2, pp. 221-222. Defendant can claim no prejudicial error in this respect. It merely recites, in effect, that the testimony of defendant Marrone as against the other codefendants must be corroborated.

Judgment and order denying new trial affirmed.

Shepard, J., and Coughlin, J., concurred.