## STATE V. LEVERS.

S., a participant in a burglary, testified that defendant, just before the commission of the crime, suggested that S. procure a team, and drive to some neighboring town, and get a piece of money; that he and one K. then left defendant's saloon, and drove a team procured from a livery to a neighboring town, and committed the burglary. A part of the stolen goods were thereafter found in defendants's barn, which could have been entered by any one. When an officer told defendant the circustances of the crime, and that a part of the goods had been found in his barn, he replied that he was sorry for K., but that S. was a thief anyway. Before K. and S. started for the place where the burglary was committed, defendant, believing that they were going to a house of prostitution, told S. that he had better pay the liveryman before he spent all his money. *Held*, that it was error for the court to refuse to direct a verdict in favor of defendant, charged with the burglary, since the evidence to corroborate the accomplice's testimony did not tend to connect defendant with the crime, as required by Comp. Laws, § 7384.

(Opinion filed December 15, 1899.)

Error to circuit court, Spink county. Hon. JULIAN BENNETT, Judge.

Joseph Levers was convicted of burglary, and brings error. Reversed.

The facts are stated in the opinion.

*E. T. Taubman,*, for plantiff in error.

The evidence was insufficient to support a verdict of "guilty." The only evidence tending to connect the defendant with the commission of the crime was that of an accomplice, and it being entirely uncorroborated was incompetent to sustain a conviction. § 7384 Comp. Laws; Neubrant v. State, 53 Wis. 92; Stone v. State, 3 Tex. App. 675; Davison v. State, 33

Ala. 350; State v. McCarty, 17 Minn. 76; Morler v. State, 68 Ala. 580; State v. Hicks, 60 N. W. 66; State v. Phelps, 59 N. W. 471; 1 Am. & Eng. Enc. of Law, 398, 401, 404; State v. Candotte, 77 N. W. 913; State v. Lawler, 28 Minn. 216.

*John L. Pyle*, Attorney General, and *Alva E. Taylor*, Asst. Attorney General, for the defendant in error.

FULLER, J. As other questions discussed may not again arise, the sufficiency of all the evidence offered to corroborate the testimony of an accomplice, upon which plaintiff in error was convicted of the crime of burglary, is deemed to be the only point in the case that need be considered. In support of the information charging plaintiff in error as a principal, Grant Skillman, an admitted accomplice, who was present at the commission of the offense, detailed at the trial the particulars of the crime in effect as follows: A short time prior to the date charged, he had a conversation with the accused, who suggested that the witness procure a team at a livery barn in the city of Aberdeen, and drive to "some neighboring town to get a piece of money." Pursuant to an arrangement made by the witness with a liveryman on the evening mention- ed in the information, a team was tied to a post in front of a jewelery store, near a saloon kept by the accused, in which the witness and other frequenters of the place were at the time drinking. Being notified that his team was in waiting, he and a man known by the name of James Kearns got into the buggy, and drove directly to Mellette, where by the use of certain tools. they broke into a building occupied and used by Henry Braun both as a residence and retail store, from which they took certain money and several boxes of cigars, which

upon returning to Aberdeen, they secreted in a barn owned by the Val Blatz Brewing Company, for which the accused was agent for the sale of beer. Concerning the search leading to a discovery of the cigars, the deputy sheriff testified in part as follows: "I think the man we found in charge of the ice house and barn was Patrick Daley, and when I wanted to search the place he said, 'all right.' He did not attempt to conceal anything, or delay the search in any way. He knew I was an officer. He had seen me around that place before. The barn where we found the cigars was not locked. There were two horses in there, I think. The cigars I found were identified by Mr. Braun afterwards as his cigars. I searched the beer house. He unlocked the beer house, and let me go in, but I found nothing. I do not know who had charge of this barn and ice house personally, outside of this man being there and having the key." The foregoing is corroborated by the following statement of the accused, testifying in his own behalf: "I am the agent for the Val Blatz Brewing Company, but do not personally take charge of the warehouse and barn. During last February the warehouse and barn were in charge of Pat Daley and a man by the name of Southwick." Cross-examination: "The barn is the property of the Val Blatz Brewing Company. My horses are in there. The hay belonged to the comany. Pat Daley was there. He is the hired man for the corporation." The undisputed evidence establishes that the accused was not present at the time when, or place where, Skillman and Kearns committed the crime, and there is nothing to show knowledge on his part that they intended to hide, or had hidden, the stolen property in the Val Blatz barn. In fact, Skillman swears that he never had any conversation with him

thereafter.  When the officer stated to the accused, at his place of business, the circumstances of the crime, and that the cigars had been found at the barn, he responded thus:  "I feel sorry for Mr. Kearns; but Skillman, I do not care anything for him. He is a thief anyway."  It is urged that this is corroborative evidence, tending strongly to "connect the defendant with the commission of the offense."  But when considered with the fact that Kearns was a customer of 'his, and apparently an industrious farm laborer, the statement has no such probative significance.  Before leaving for Mellette, and while Skillman, Kearns, and the liveryman were all in the saloon, something was said about the team, and the defendant, Levers, believing, as he claims, that, from what Kearns said, they were going to a house of prostitution. suggested to him that "he had better pay the man for the rig before they spent their money."  From this circumstance, taken alone, a reasonable man could not well infer guilt, and all the facts and circumstances considered, in dependently of the testimony of Skillman, which is made to appear highly improbable, do not relate to a material issue or tend to implicate the accused.  In order to avoid erroneous convictions secured by evidence coming from the mouths of confessed criminals, anxious, at least, to thereby obtain immunity, the framers of the statute have taken the precaution to codify a wholesome rule of the common law, which prohibits a conviction "upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense;" and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.  Comp. Laws, § 7384.  Neither the statement made by the accused in his saloon

before bystanders, nor the presence of Skillman and Kearns at such a public place of business just before leaving for Mellette, has any tendency to confirm a material statement made by the accomplice, and both of such circumstances are entirely consistent with the theory of innocence. The stolen goods not being found in his possession, but in an open barn, not under his immediate control, the accused was not called upon to account for their presence, or explain why Kearns and Skillman secreted them there. Notwithstanding numerous credible witnesses swore to a state of facts which, if true, renders it impossible for the conversation to have taken place between the accused and the accomplice about which the latter testified, we might assume all that he said to be true, and the fact would still remain that there is nothing to show a criminal intent to break and enter the store of Henry Braun, or to commit such crime in any particular town, county, or state. The only testimony bearing upon the point is that of the accomplice, and is as follows: "Levers said: 'Why don't you go out and get a piece of money? * * * Get a livery rig, and drive to some of these towns.' I did not know where I was to go. Mr. Braun's name was not mentioned to me." The information charges specifically an intent on the part of Joseph Levers to break and enter the store and dwelling house of Henry Braun, "at the town of Mellette, in the county of Spink and the State of South Dakota," at a specified time, and in a particular manner, but there is nothing tending to establish such a state of facts. "Criminal intent is a necessary ingredient of crime, and is essential to render one an accomplice." 1 Am. & Eng. Enc. Law (2d Ed.) 391, and cases there cited. In the case of Neubrandt v. State, 53 Wis. 89, 9 N. W. 824, the court

says: "The information having charged a particular intent to steal the goods of John Bachtel, it is insisted by the learned counsel for the accused that no conviction can be had upon the information without proving such particular intent. That proof which shows a general intent to steal or the intent to steal the goods of some other person would not be sufficient to justify a conviction. This view of the case is undoubtedly the true one, and was taken by the learned judge who tried the case in the court below, as appears from his instructions to the jury on the trial." The corroborative evidence contemplated by the statute is evidence that tends to support or strengthen in the respect that it tends to connect the defendant with the commission of the crime charged. State v. Hicks, 6 S. D. 325, 60 N. W. 66; State v. King, 9 S..D. 628, 70 N. W. 1046. In the absence of any facts or circumstances corroborative of the testimony of an accomplice, reasonable men may not infer the existence of guilt, and the question becomes one of law for the court. U..derhill, Ev. 464. As such was the condition of this case when the court was requested to advise the jury to return a verdict of not guilty, the judgment is reversed, and a new trial awarded.