STATE, Respondent, v. DRAPEAU, Appellant.

(189 N. W. 305.) .

(File No. 5035.   Opinion filed June 27, 1922.)

1.  **Appeal—Error—Court's Refusal to Direct Acquittal, Whether Error.**

    It is settled law of this jurisdiction that refusal of trial court to advise acquittal is not reversible error.

2.  **Trials—Instructions, Non-exception To, As Basis of Their Correctness Re Corroboration of Accomplice.**

    Where no exceptions were taken to trial court's instructions, this Court will assume that jury were fully and properly instructed as to necessity of corroboration of accomplice's testimony.

Criminal Law—Accomplice, Testimony of, Corroboration Necessary to Conviction—Rule—Statute.

Under Sec. 4882, R.. C. 1919, providing that a conviction cannot be had upon accomplice's testimony without such corroborative evidence as tends to connect defendant with commission of the offense, and that corroboration is ·not sufficient if it merely shows commission of the offense or circumstances thereof, held, (following State v. Sonnenschein, 37 S. D. 585), that the degree of evidence which shall be deemed sufficient corroboration is for determination of jury; the law is complied with if there is some other evidence fairly tending to connect defendant with commission of crime; that no general · rule re quantum of corroborative evidence can . be stated, each case must be governed by its own circumstances, keeping in view nature of the crime, character of accomplice's testimony and general requirements as to corroboration; the corroborative evidence need not be strong, absolutely convincing, or 'sufficient in itself to establish guilt, nor even equivalent to "the swearing of one creditable witness"; any corroborative evidence legitimately tending to connect defendant with commission of crime may warrant conviction, even though not wholly inconsistent with defendant's innocence.

4.   Same—Robbery—Defense of Alibi—Defendant and . Accomplice Initimately Together in Locus, Whether Showing Defendant's Connection with Crime.

The fact that at or about time of commission of the offense charged, defendant and the accomplice were together in apparent intimacy in neighborhood of place where crime was committed may sufficiently connect defendant with commission of crime to furnish necessary corroboration of accomplice.

5.   Same—Alibi—Testimony of Witnesses to Proximity of Defendant and Accomplice to Locus of Crime, Deemed Sufficient Re Corroboration.

While, ' in a trial for robbery, defense being an alibi, the mere testimony of the person robbed that two men whom he could not. identify robbed him, is insufficient corroboration of accomplice's' testimony, yet where, in addition to accomplice's testimony that he held the gun on: the victim while defendant robbed him, several other witnesses testified to the proximity of defendant and the accomplice to the locus of the crime at times shortly before its commission, that the accomplice sought to borrow from several of them a gun, one of them testifying that he loaned his gun to accomplice, who returned it on the morning following the robbery, sufficiently complies with the rule as to amount of corroborative testimony necessary to sustain conviction.

**6.** Same—Alleged Contradiction, Untruthfulness, in State's Testimony, Rule Re Jury's Liberty to Credit Testimony Believed to Be True, and Reject Balance, Stated.

It is sufficient, in response to appellant's contention that some testimony in the record is contradictory in itself, and other portions untrue by great weight of contradictory evidence, to suppose that jury might found their verdict on such portions thereof as they believe true, and reject the balance; their finding thereon being conclusive on appeal.

**7.** Criminal Law—Robbery—Accomplice, Unwilling Testimony of, Court's Admonition of Its Importance, That His Truthful Testimony Would Be Beneficial Re Pardon, Whether Ruling Prejudicial.

Where an accomplice, after taking the witness stand and announcing that he was called to testify against his will and defendant's, and upon being interrogated for the state, his memory appeared to fail entirely beyond relating his own participation in the robbery, and after a recess taken, court admonished him it was important that he testify truthfully even though against his wishes, that ordinarily his refusal would result in commital for contempt; that should he in future apply for pardon or parole, that if he failed to testify truthfully and frankly it would be court's duty to advise Pardon Board, which information might influence it, in their action upon such application; whereupon witness detailed the entire transaction; held, that such admonition was not improper, witness's sole motive in failing to testify frankly and fully being his apparent desire to shield a comrade in crime, and if witness's attitude induced jury to give greater weight to his testimony, it was merely accused's misfortune resulting from his past voluntary association with a self-confessed criminal; that the court's suggestion was in keeping with the not infrequent practice of state officers to offer inducements, such as immunity from prosecution. to secure essential evidence from associates in crime.

Appeal from Circuit Court, Yankton County.   Hon. ROBERT B. TRIPP, Judge.

The defendant, Raymond Drapeau, was convicted of the crime of robbery, and he appeals.   Affirmed.

*Caster & Cassidy,* and *H. A. Doyle,* for Appellant.

*Howard Warren,* State's Attorney, and *Byron S. Payne,* Attorney General, for Respondent.

(5)   To point five of the opinion, Appellant cited:   People v. Ames, 39 Cal. 403; Weldon v. State, 10 Tex. A., 400.

SMITH, J. Appellant was convicted of the robbery of one Henry Buckhart, and appeals from the judgment and an order overruling his motion for a new trial. He pleaded not guilty, and claimed an alibi. It appears that one Mason had been charged with participating in the same robbery, had pleaded guilty, and had been sentenced to the penitentiary, whence he was returned upon order of the trial court to testify against appellant. His testimony, given with great reluctance, was, in substance, that Drapeau lived in Yankton, at the south end of Pearl street, next to the river; that on the night of the robbery, about 6:30, he and Drapeau went up to Buckhart's residence together; that the day before they had both been at Buckhart's house and had met a woman from Sioux City, who had exhibited a considerable sum of money; that when they went to Buckhart's on the evening of the 31st their purpose was to induce this woman to leave the house with another woman, who was aiding them, and thus give them an opportunity to take her money; that the woman refused to leave the house; that a porch or platform ran along the west side of the house and around on the south side, where the door was; that Mason went around on this platform from the west side to the south side of the house, and saw Buckhart sweeping snow off the walk, and called to him to put up his hands, which he did when covered with the gun; that Drapeau searched him and took his pocketbook; that he and Drapeau then ran away, and met at defendant's house, where they divided the money.

One Rudolph Magara, a witness for the state, on direct examination testified that he saw George Mason and Raymond Drapeau at the corner of the Dakota National Bank on Sunday night just before the robbery; that he had a conversation with Mason and Drapeau there that evening; that Mason wanted to borrow a gun from him, and asked him to go with them; that Mason did the talking; that Drapeau did not say anything; that Mason said they wanted to go down by the river bank and rob a woman of $200 that she had; that afterward, about February 21st, he talked with Drapeau near Mooney's pool hall; that Drapeau was cussing Whitey (meaning George Mason) "for telling"; that there were three or four there, and after the bunch started to leave Drapeau told the witness to "keep still." On cross-examination this witness made certain statements inconsistent with

some of his testimony on direct examination.

One Enoch Hough testified that he was clerk at the Merchants' Hotel in Yankton; that a little before the time of the robbery Mason and Drapeau came to the hotel together; that Drapeau remained outside, and that Mason came in and wanted to borrow a gun.

One Fred Jones testified that on the evening previous to the robbery he saw Mason at Mooney's pool hall; that Mason wanted to borrow a gun, saying he wanted to kill a dog; that he told Mason he had no gun himself, but that his brother-in-law, Harry Arend, had one; that they went together to find Arend; and that Arend loaned Mason a gun, being the one identified as an exhibit in evidence.

Harry Arend testified that he saw Mason by the library about 4 o'clock in the afternoon of the day of the robbery, and loaned him the gun; that Mason brought the gun back the next morning; that Drapeau was not with Mason when he borrowed the gun.

The wife of accused, as a witness for defendant, testified that Mason came to their home about 6 o'clock on the evening of the 31st day of January, the evening that the robbery took place; that he called for her husband, and showed her husband something which she thought was a gun; that her husband asked him, "Where did you get it?" and he said, "From Harry Arend."

Henry Buckhart testified to what occurred at the time of the robbery substantially the same as Mason, but stated that both men were masked, and he could not and did not recognize either of them, but stated that the man holding the gun on him said to the other man, "Get him Ray," and the other man came from the corner of the house and searched his pockets, taking a purse containing $9 or $10 in money; that it was between 8:30 and 9 o'clock in the evening.

Other evidence, tending to prove an alibi, is immaterial on the question of insufficient corroboration relied upon by appellant.

At the close of all the evidence, defendant's counsel moved the court to advise the jury to return a verdict of acquittal on the ground that there was no evidence sufficient in law to corroborate the testimony of Mason, who was an accomplice in the crime charged. The denial of this motion is assigned as error.

[1] It is the settled law of this jurisdiction that reversible error cannot be predicated upon the refusal of a trial court to advise an acquittal. State v. Stone, 30 S. D. 23, 137 N. W. 606; State v. Guffey, 39 S. D. 84, 163 N. W. 679. Appellant's main contention, however, is that the evidence of corroboration is insufficient to sustain a conviction upon the testimony of an accomplice. Section 4882, R. C. 1919, provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

[2] No exceptions were taken to the instructions of the trial court, and we must therefore assume that the jury were fully and properly instructed as to the necessity of corroboration of the testimony of Mason as an accomplice of the accused.

[3] In State v. Walsh, 25 S. D. 31-35, 125 N. W. 295, this court said:

"While it is necessary that the evidence of an accomplice be corroborated, yet the degree of evidence which shall be deemed sufficient to corroborate the testimony of an accomplice is for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice."

See, also, State v. Kruse, 24 S. D. 174, 123 N. W. 71; State v. Hicks, 6 S. D. 325, 6 N. W. 66. This statement of the law is sustained by the authorities generally. In 16 Corpus Juris, 711, 712 (1457, 1458), it is said:

"No general rule can be stated with respect to the quantum of evidence corroborating an accomplice's testimony, which is necessary to warrant a conviction; but each case must be governed by its own circumstances, keeping in view the nature of the crime, the character of the accomplice's testimony, and the general requirements with respect to corroboration."

"The evidence adduced to corroborate the accomplice need not be strong, absolutely convincing, or sufficient in itself, to support a verdict of guilty, nor even equivalent to the swearing of one credible witness; any corroborative evidence legitimately

tending to connect defendant with the commission of the crime, may be sufficient to warrant a conviction, although, standing by itself, it would be only slight proof of defendant's guilt, and entitled to but little consideration, and even though it is not wholly inconsistent with the innocence of the defendant"—citing cases. ·

It is also held that:

[4] "The fact that at or about the time of the commission of the offense with which defendant is charged he and the accomplice were together in apparent intimacy in the neighborhood of the place where the crime was committed may sufficiently connect the defendant with the commission of the crime to furnish the necessary corroboration of the accomplice." Id. 708. (1446).

[5, 6] It must be conceded that the testimony of Buckhart alone would be insufficient corroboration of Mason's testimony, as it merely "shows the commission of the offense or the circumstances thereof." But we are of the view that the testimony of the other witnesses hereinbefore referred to is amply sufficient "to connect the defendant with the commission of the offense." Appellant's counsel urges that certain of the testimony referred to is contradictory in itself, and that other portions are shown to be untrue by the great weight of contradictory evidence. It is sufficient to observe that the jury were at liberty to found their verdict upon such portions of the evidence as they believed to be true, and to reject that which they believed to be untrue, and that their finding upon such facts is conclusive upon this court.

[7] Appellant also urges error on the part of the trial court in certain proceedings of the trial court at the time of the giving of the evidence of the witness Mason. When first placed upon the witness stand, Mason announced that he was called to testify against his will; that he did not desire to be a witness, and, upon being interrogated by the prosecuting officer, his memory appeared to fail entirely as to all important details connected with the crime, except those relating to his own participation in the robbery. A recess was taken, and on reconvening the trial court admonished the witness that it was important that he testify truthfully, even though brought to testify against his own wishes; that in the case of an ordinary witness refusing to testify, he

would be committed to jail for contempt; that such a proceeding was not available in this case, inasmuch as the witness was already committed to the penitentiary; that at some time in the future the witness might desire to apply for a pardon or parole, and in such case the judge who sentenced him to the penitentiary must be notified of such application; that it was the duty of the witness to testify truthfully and frankly in this case; that if the witness did not do so, it would be the duty of the court to advise the Pardon Board with reference to such conduct, and that such information might influence the board in their action upon such application, though the court would regret the necessity of so doing. The witness was then admonished to "tell the story just as it occurred." The witness thereupon told, in detail, the entire transaction. His testimony tended to show that appellant assisted and participated in the robbery, and that they were together at several of the times and places shown by the evidence of corroborating witnesses above set forth.

Appellant contends that such an admonition by the trial court was wholly uncalled for, and highly prejudicial to the rights of the defendant; that, in fact, it amounted to a promise by the court that he would recommend a pardon or parole if the witness would testify against defendant, otherwise not; that the action of the court conveyed to the minds of the jury an impression that the court was of the view that defendant was guilty and should be convicted.

The action of the trial court was not excepted to, and is not assigned as error. Hence the question of error or prejudice is not before us for review. Regardless of that fact, however, we see no impropriety in the admonition given the witness to tell the truth, coupled with a suggestion that it might be to his advantage to do so. The only motive which could have actuated the witness in failing to testify frankly and fully as to the facts was his apparent desire to shield a comrade in crime, and if his attitude induced the jury to give greater weight to his testimony, it was merely the misfortune of the accused, resulting from his past voluntary association with a self-confessed criminal. It not infrequently happens that the ends of justice prompt the officers of the state, and even Legislatures, to offer inducements, such even as immunity from prosecution, to secure essential evidence

from associates in crime, and certainly the suggestion of the trial court in this case went no further.

The order and judgment of the trial court must be affirmed.