I am authorized to state that Justice DUNN is in accord with my position.

STATE, Respondent v. NEITZEL, Appellant

(219 N.W.2d 480)

(File No. 11147. Opinion filed June 20, 1974)

Order denying petition for rehearing July 30, 1974

Walter W. Andre, Asst. Atty. Gen., Pierre, for plaintiff and respondent; **Gordon Mydland**, Atty. Gen., Pierre, and **Richard Kolker**, State's Atty., Aberdeen, on brief.

**Murray Ogborn**, Aberdeen, for defendant and appellant.

MANSON, Circuit Judge.

Defendant, convicted of rape in the second degree by a circuit court jury in Brown County, South Dakota, appeals from his sentence.

One of the specifications of error asserts that the trial court erred in permitting amendment of the information. This amendment was sought by the prosecutor to bring the pleading into verbatim conformity with the charging statute. The motion addressed to this end was tendered to the trial court after the trial jury was drawn and sworn, but before a witness was sworn. The court had jurisdiction, the hearing thereon was full and fair, the amendment was granted and the trial went forward thereon.

We note that defendant declined an offer by the trial judge to return the matter to the committing magistrate for preliminary proceedings after the amendment was granted, that defendant waived arraignment under the amended information, stating that his standing plea of not guilty would stand thereto, that defendant's counsel declined the court's offer of additional time to meet the amended information, that no objection was interposed to the reception of evidence in support of the amended information and that no substantial ground for objection was stated by defendant, all of which is consistent with the view we now announce, which is to say that no error eventuated from this ruling.

■ Defendant also contends that he was prejudiced by improper communications made to jurors and by refusal of the trial court to grant a new trial on this ground. The incident upon which he bases this specification took place at the noon recess on the second day of the trial. Defendant's affidavit states in part:

"* * * on or about February 24, 1972, following the noon recess of the trial, I was being taken back to the Brown County Jail by either the Sheriff or one of his deputies, when I observed Captain Steven Oakes of the Aberdeen Police Department standing at the top of the stairway in the vestibule to the Courtroom. Captain Oakes was talking to [the prosecutrix], her parents and several other people. He had a file with him and was in the process of showing the [name of prosecutrix's parents] and other people pictures from this file. Captain Oakes was speaking in a loud voice and was discussing the facts of this case.

"When I walked out of the door leading to the Judge's Chambers, Captain Oakes saw me and immediately replaced the photographs in his file and stopped talking. At that time I noticed that several of the jurors were standing in the vestibule. Two members of the jury were standing by the water fountain across the room and several other people, possibly members of the jury, were standing in various spots around the room. Some of the jurors were putting on their coats at this time.

"Although I didn't hear the complete conversation that was taking place between Captain Oakes and the people with whom he was talking, I did hear one of the people say 'What do you think about it?' and Captain Oakes responded 'I think I know he is.'

"The photographs that Captain Oakes was showing to [prosecutrix], her parents and various bystanders were never introduced as evidence in the trial. His comments were very obviously about the evidence he anticipated would be used by the State. It was impossible for members of the jury standing in the same room not to have overheard remarks made by Captain Oakes.

"It is my belief that statements made by Captain Oakes and overheard by members of the jury were prejudicial to me and that because of these remarks made by a witness subsequently called by the State I was denied a fair trial."

The affidavit was buttressed by another made by a spectator at the trial who observed a conversation between Oakes, the prosecutrix and others. This affiant, who says that he "didn't hear his exact conversation", nevertheless concluded that "they" were discussing the case.

It should be noted that the trial court was not apprised of this incident until June 6, 1972, at least three months after defendant was sentenced, and only in connection with his motion for new trial. At the hearing on the motion, resisted by the prosecution, defendant's counsel urged the granting of a new trial on several grounds. He first asserts that the "communication" with the jurors invalidated the trial in any event and that he was entitled to prevail where, as here, the prosecution had submitted no showing to countervail his affidavits. The trial court, in ruling adversely on the motion, found that the showing made by defendant "does not indicate that anything prejudicial was said, and there is no indication in the entire showing that there was any communication by Captain Oakes * * * to any of the jurors * * *."

These findings were amply justified by the content of the affidavits submitted or, as is perhaps more accurate, the lack of material content in such affidavits. As observed by the learned trial judge, they did not show an improper communication, and in failing to make this showing defendant has failed to sustain the burden of proof predicated in such cases by State v. Brown, 1969, 84 S.D. 201, 169 N.W.2d 239. Defendant cannot be heard to complain of the paucity of countervailing evidence where he himself failed in his primary proof. No error.

■ The next assignment of error, charging that the evidence was insufficient to justify the verdict, rests upon the uncontroverted evidence adduced at the trial (defendant neither testified nor called witnesses in his behalf) which established that prosecutrix,

a single female with a farm background, 18 years of age, 5' 3½" tall and a first year college student, was telephoned three times on the evening of January 11, 1972, for a "party date" by defendant, a male, 6' 1" tall and a self-described university student. The prosecutrix finally acceded to defendant's persuasion and agreed to meet him to "look him over" before deciding whether to go on a party with him.

Defendant then picked the prosecutrix up at her dormitory, first telling her that they would drive around and he would have her back in an hour but after getting her in his car, telling her that they were going to a party where she would be "initiated". She demurred to this, saying she did not want to be initiated and wanted to go back. At this, he said they would go to a house where he would call and advise that they were not coming to the party. Defendant (who had introduced himself by a fictitious name) took prosecutrix to the lower level of a vacant house where he advised her that there was no telephone and that "this" was to be her initiation. She again asked to be taken back and he agreed to leave, but took her instead into an adjoining basement with only one door.

At this point he advised her that he was a criminal, that he was wanted for kidnaping, armed robbery and murder and that his face was "* * * in every post office in the United States * * *." At this juncture, prosecutrix became frightened and tried to stall for time by encouraging him to talk. This he did, immediately advising her that she was to do as he said or he would bash her head against the wall. He then told her to take her clothing off. She again attempted to stall, having guessed what was in prospect, but defendant threatened to kill her and her clothes were then removed by him. Prosecutrix testified that she began to fear for her life, a fear which was reinforced by his threat to kill her if she "* * * cried or screamed or tried to run * * *."

At this time, prosecutrix asked defendant to promise not to hurt her, whereupon he handed her an open Barlow knife, telling her that if he hurt her, she could "'* * * hurt [him] right back.'" Any reassurance implicit in this arrangement was immediately dispelled when he advised her that if she used the

knife and didn't do the job he would kill her. They went back out through the door into a darkened room with a bed upon which a completed act of sexual intercourse took place between them, occasioned, as she testified in the trial, because "*    *    * he said if I didn't he would kill me."

Taken back to her dormitory by defendant, prosecutrix, distraught and crying, made immediate complaint to a girl friend' and was soon thereafter given a vaginal examination by a physician who confirmed that an act of intercourse had, indeed, taken place.

Defendant's position seems to be that the evidence submitted in the course of the trial by the state was insufficient because it was susceptible to the inference that the intercourse between the parties was consented to by prosecutrix who (in defendant's view) did not resist sufficiently.

This view was fully and freely urged upon the jury in closing argument and obviously rejected by that jury in its deliberations. This notwithstanding, defendant posits that refusal of the jury to adopt an inference favorable to him somehow negates the sufficiency of the evidence underlying that inference.

We do not apprehend this to be the law. This court is bound by reason and precedent to "*    *    * view the evidence in light most favorable to the state on appeal from a conviction." State v. Henry, 1973, 87 S.D. 454, 210 N.W.2d 169, 171. Application of this principle is linked in Henry with the bottom line of State v. Geelan, 1963, 80 S.D. 135, 140, 120 N.W.2d 533, 536, where we have said:

> "Accepting the state's evidence and indulging the most favorable inferences which can fairly be drawn there-from, as the jury had a right to do, we have no hesitancy in holding that the evidence is sufficient to sustain the verdict."

The record in the instant case impels us to the same view, based upon the same grounds. No error.

Defendant also contends that the instructions given to the jury were inadequate and incomplete in their failure to include an instruction requested by him and refused by the trial judge. We cannot agree in this contention. The jury was fully and scrupulously instructed in the law of the case. The instruction tendered by defendant and quite properly rejected by the presiding judge was, in fact, an instruction on rape in the first degree, hence inappropriate to the offense charged and proven. No error.

Affirmed.

All the Justices concur.

MANSON, Circuit Judge, sitting for WOLLMAN, J., disqualified.