**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Carmine GIULIANO, Defendant and Appellant.**

**No. 12129.**

Supreme Court of South Dakota.

Sept. 7, 1978.

34

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Charles Rick Johnson, Johnson, Johnson & Eklund, Gregory, Theodore Krieger, Sayville, N. Y., for defendant and appellant.

WOLLMAN, Justice.

Appellant was tried on a three-count information. Count I charged the unlawful possession of "more than one ounce of marijuana; and, or less than one ounce of marijuana in a processed form"; Count II charged appellant with aiding and abetting the distribution or dispensing of marijuana; and Count III charged appellant with conspiracy to distribute or dispense a controlled substance. A jury convicted appellant on all three counts. Appellant was sentenced to two years' imprisonment on Count I, to three years and a $1,500 fine on Count II, and to one year on Count III, the sentences to run concurrently. We affirm.

The state's evidence, without the accomplice testimony of Marc Stekloff, established the following facts. On the evening

of October 30, 1975, state agent Don Gromer and Sheriff Dan Elston of Bon Homme County went to Vermillion to work on drug cases. From Our Place bar, they called a cab and were picked up by a taxi driven by one Marc Stekloff. They asked Stekloff to drive them to Beede Hall, a university dormitory. On the way they asked Stekloff whether he knew where they could get some marijuana. Stekloff advised the agents that he had a couple of "lids" of home-grown marijuana to sell. The agents expressed little interest in the offer but told Stekloff that they would call him should their Beede Hall contact fail to produce.

Approximately twenty minutes later, the agents again called the cab company and were picked up by appellant. En route back to the Our Place bar, agent Gromer asked appellant where Stekloff was and informed him that Stekloff had earlier promised them some marijuana. The agents told appellant that they were interested in purchasing some foreign marijuana in pound quantities. Although there was some conflict in the testimony at this point, appellant apparently replied to the effect that he thought Stekloff could possibly furnish this but that they would have to call Stekloff back at the taxi office. Appellant further stated that he thought the price of a pound of marijuana was one hundred seventy-five dollars.

After obtaining one hundred fifty dollars from the Clay County Sheriff, agent Gromer returned to Our Place and observed Stekloff seated at the bar. Stekloff asked him whether he was still interested in purchasing the two lids of home-grown marijuana. Agent Gromer then informed Stekloff that he and Elston had discussed with appellant the possibility that Stekloff might sell them a pound of marijuana. Stekloff replied that prior to agreeing to such a purchase he would have to make a telephone call. When he returned from making the call, Stekloff told Gromer that a pound of marijuana was available for him to purchase. As Stekloff and the agents were leaving Our Place, Stekloff remarked that "they" sold marijuana as a business.

The two agents then accompanied Stekloff in his automobile to the trailer that served as the taxi company's office. Stekloff advised appellant that the agents were there to buy the pound. Appellant replied that Stekloff would have to get it out of the car and that the purchase would have to be made in the next trailer. Stekloff made the sale to the agents in his own trailer next door to the taxi office, whereupon the agents arrested him. Appellant was then arrested in the taxi office. A search of appellant's person turned up two sets of keys but no drugs. A search of the taxi office yielded a small quantity of marijuana, and a search of the trunk of Stekloff's car uncovered approximately two pounds of marijuana and .67 ounces of hashish.

Testifying for the state, Stekloff stated that appellant had placed the drugs in the trunk of his car because appellant's own car had recently been burglarized. He further testified that he believed appellant had a key to the trunk of his (Stekloff's) car and that he thought the drugs were owned by appellant and a person known to Stekloff as "Skeeter". Stekloff testified that he and appellant met at Godseye Lounge after appellant had dropped the agents off at Our Place. There, he and appellant discussed selling the agents two bags of marijuana, and when Stekloff returned to the taxi office, appellant bagged up two lids from the cache in the trunk. When Stekloff brought the lids to Our Place, the agents informed him that they were interested only in pound quantities. Upon arriving at the taxi office, Stekloff and appellant again discussed the advisability of the sale to the agents. Stekloff then went to his own trailer, where the sale was made.

Appellant's testimony generally disputed Stekloff's version of the events. Appellant denied owning any marijuana and denied placing any drugs in Stekloff's car. He denied having a key to Stekloff's trunk. Appellant further denied that he had met Stekloff at Godseye Lounge or that he had had anything to do with the sale.

## REPUDIATION OF PLEA BARGAIN

On March 31, 1976, appellant and Stekloff entered into a plea bargain with the Clay County State's Attorney. Under that agreement, appellant would plead guilty to one count of aiding and abetting the distribution of a controlled substance and would assist the Division of Criminal Investigation as an unpaid narcotics agent in securing six or eight good drug arrests. In return for this, the state would drop the original four count information against appellant, acquiesce in appellant's request for a suspended imposition of sentence, and fully inform the court of appellant's cooperation as a mitigating circumstance.

By letter of June 11, 1976, the Clay County State's Attorney informed appellant that because he had "completely failed to carry out the plea bargain," the state was repudiating the agreement. Immediately prior to trial, appellant withdrew his guilty plea and was arraigned on the four count information. During the trial, out of the hearing of the jury, appellant introduced evidence that he asserts showed a good faith attempt to perform his part of the bargain.

Appellant contends that the trial court erred in allowing the state to unilaterally repudiate the plea bargain, thereby denying him due process of law under the rule of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. The state responds that because appellant failed to demand compliance with the plea bargain before he withdrew his guilty plea and proceeded to trial, the trial court was not called upon to decide whether the state could unilaterally withdraw the bargain. Therefore, the state argues, the issue of under what circumstances specific enforcement, rather than withdrawal of a guilty plea, must be employed to remedy a breached plea agreement is not before this court. See *Palermo v. Warden*, 2 Cir., 545 F.2d 286.

■ We conclude that the state's position is well taken. It is a well-established rule that the trial court must have been afforded an opportunity to rule on a point of law by proper motion or objection before we will entertain an argument based on the court's failure to so rule. *State v. Gayton*, 83 S.D. 141, 155 N.W.2d 919; *State v. Kindvall*, 86 S.D. 91, 191 N.W.2d 289; *State v. Barr*, S.D., 232 N.W.2d 257; *State v. Miller*, S.D., 248 N.W.2d 874. We see no reason to depart from that policy in this case. *Santobello, supra*, indicates that depending on the circumstances of the case, either specific performance or the opportunity to withdraw a plea will remedy a breached plea bargain. In this case, two months passed between the state's letter of repudiation and the trial, ample time for appellant to have moved the court for relief. Appellant nevertheless chose to withdraw his plea, a choice that went unopposed by the state. Cf. *State v. Losieau*, S.D., 266 N.W.2d 259. In the absence of a proper motion to compel the enforcement of the plea agreement, appellant will not be heard to complain on appeal that he was prejudiced by being permitted to withdraw his plea.

## THE AMENDED INFORMATION

Appellant was initially charged in a four count information. Count I alleged the possession of more than one ounce of marijuana, and Count II alleged the possession of hashish. Following jury selection, but prior to the reading of the information, appellant moved to dismiss Count II on the ground that because no statute specified "hashish" as a controlled substance, Count II alleged no public offense. The trial court granted the motion. In response to the state's motion, the trial court amended Count I to charge appellant with the possession of "more than one ounce of marijuana; and, *or less than one ounce of marijuana in a processed form*." (The italicized words constitute the extent of the amendment.)

■ Appellant first contends that SDCL 23–39–1 is the exclusive method provided in our statutes for amending informations and that since the amendment in question did not come within its terms, the court had no authority to amend. We believe appellant's reliance on SDCL 23–39–1 to be misplaced. That statute refers to amendments framed during trial to conform an information to

the proof adduced at trial. See, e. g., *State v. Long*, 85 S.D. 431, 185 N.W.2d 472. We are here concerned with an amendment made prior to the presentation of any evidence. Accordingly, SDCL 23–39–1 has no application.

■ An amendment to an information is improper only if a defendant suffers prejudice as a result. SDCL 23–1–2. Appellant does not complain of surprise, nor does he contend that the amended information went beyond the evidence presented at the preliminary hearing. See *State v. Martin*, 85 S.D. 587, 187 N.W.2d 576. Appellant having suffered no prejudice resulting from the amendment, we hold that the trial court did not err in permitting the state to amend the information.

■ Appellant also contends that he was never arraigned on the amended Count I. We find this contention to be without merit. Appellant was present with counsel throughout the amendment proceedings. He had pled not guilty to the possession of hashish charge only moments before when it was the gravamen of the original Count II. In effect, then, the pretrial arraignment was reopened on appellant's motion. When asked whether appellant would stipulate that his plea to the amended information would remain the same, appellant's counsel replied in the affirmative. Under such circumstances, appellant was adequately arraigned on the amended count. *State v. Neitzel*, 88 S.D. 307, 219 N.W.2d 480.

■ Appellant finally contends that the use of the disjunctive phrase "and, or" renders Count I fatally defective because it charges more than one offense. We do not agree. In *State v. Strauser*, 75 S.D. 266, 271, 63 N.W.2d 345, 347, we said that the use of the disjunctive rendered an information defective where "the use of either or any of two or more accusatory words creates uncertainty as to which of two or more offenses created by the one statute, is charged, . . ." We went on to hold that where the words "seized, decoyed, or carried away" were "synonymous in the

sense that each alone could supplant any other" as fulfilling one element of one offense, the disjunctive pleading was not fatal to the charge. See also *State v. Martin*, 105 Ariz. 265, 463 P.2d 63; *State v. Sheffey*, Iowa, 234 N.W.2d 92. In this case appellant was charged by the information with possession of a controlled drug or substance contrary to SDCL 39–17–95 (Repealed by SL 1976, Ch. 158, § 42–23, effective April 1, 1977). That section provided:

> It is unlawful for any person knowingly or intentionally to possess a controlled drug or substance unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this chapter. Any person who is convicted of a violation of this section shall be sentenced to a term of imprisonment of not more than five years, or by a fine of five thousand dollars, or by both such fine and imprisonment. Upon conviction of second or subsequent offenses, the sentences shall be the same as provided for second or subsequent offenses in § 39–17–90.

SDCL 39–17–46 defined controlled substances as those listed in Schedules I thru IV. SDCL 39–17–57 (Schedule I) listed in subpart (7) "marihuana." Except for the situation addressed in SDCL 39–17–96—possession of less than one ounce of marijuana in its natural and unaltered state—neither the amount nor the form of the controlled substance altered the offense charged. Appellant was on notice with respect to the nature of the charge. Although we decry the use of the "grammatical monstrosity 'and/or'," *Boggs v. Commonwealth*, 285 Ky. 558, 561, 148 S.W.2d 703, 704, in this case Count I as amended charged but one offense. The words following "and," in the amended count were, as appellant argued to the trial court, a restatement of the same offense—and as such did not violate appellant's rights. The trial court committed no error in overruling appellant's objection to amended Count I.

█ 38

█ Appellant contends that the trial court erred in failing to give an instruction defining the phrase "marijuana in a processed form." Appellant did not offer such a proposed instruction, however, and accordingly the failure to give such an instruction was not error. SDCL 23–42–6(5); 15–6–51(b); *State v. Poppenga*, 76 S.D. 592, 83 N.W.2d 518; *State v. Greene*, 86 S.D. 177, 192 N.W.2d 712.

## THE CONSPIRACY CHARGE

█ Appellant contends that his conviction for conspiracy under Count III of the information cannot stand because the conspiracy charge against the co-conspirator, Marc Stekloff, was dismissed by the state. This claim is without merit. As stated by the court in *Feldstein v. United States*, 9 Cir., 429 F.2d 1092:

Similarly, in the conspiracy charge, one can be convicted even though the indictment against all the other conspirators has been dismissed. Such conspirators need not even be charged. 429 F.2d at 1095.

See also *United States v. Coronado*, 5 Cir., 554 F.2d 166, 171 n. 7; *State v. Lockhart*, 241 Iowa 635, 39 N.W.2d 636; *Regle v. State*, 9 Md.App. 346, 264 A.2d 119.

█ Count III charged in the language of SDCL 39–17–111 that appellant did "endeavor or conspire" to distribute or dispense a controlled substance. Appellant contends that this count charged two separate offenses and should therefore have been dismissed. At the arraignment, appellant demurred orally to Count III on the grounds that SDCL 39–17–111 is unconstitutional because the words "endeavor" and "conspire" are "diametrically opposed" and because the statute is vague.

SDCL 23–36–11 requires that:

The demurrer must be in writing, signed either by the defendant or his counsel, and filed. It must distinctly specify the grounds of the objection to the indictment or information or it must be disregarded.

The "demurrer" interposed by the appellant was not in writing and did not specifically set forth appellant's objection that Count III charged more than one offense. Appellant's oral objection, therefore, did not satisfy the requirements of the statute. Cf. *State v. Korth*, 38 S.D. 539, 162 N.W. 144, reversed on other grounds 39 S.D. 365, 164 N.W. 93. See also *State v. Woodell*, 22 N.D. 230, 132 N.W. 1003; *State v. Climie*, 12 N.D. 33, 94 N.W. 574. Notwithstanding appellant's failure to comply with the requirements of SDCL 23–36–11, we conclude that the defect, if any, in Count III was cured by the trial court's instruction defining conspiracy, which clearly informed the jury that among the essential elements of the offense of conspiracy was the requirement that the state must prove that appellant and one or more co-conspirators endeavored to distribute or dispense controlled substances.

We have considered appellant's remaining attacks on the validity of Count III and conclude that they are without merit.

## HEARSAY AND ACCOMPLICE TESTIMONY

Appellant contends that it was reversible error for the trial court to admit statements made by Marc Stekloff to the state agents as declarations of a co-conspirator prior to the establishment by independent evidence of the existence of the conspiracy and appellant's participation therein. We do not agree. In *United States v. Jennings*, 5 Cir., 527 F.2d 862, the court rejected a similar contention, stating:

Courts have recognized the discretion of trial judges to control the order of proof, and in conspiracy trials the court may admit hearsay acts and statements of alleged co-conspirators subject to later proof by independent evidence of the existence of the conspiracy and the defendant's connection therewith. 527 F.2d at 866.

The Court of Appeals for the Eighth Circuit has adopted a similar view:

There is no requirement that the independent evidence of conspiracy be introduced prior to the introduction of the co-con-

spirator's statement. The order of proof is a matter left to the discretion of the trial court. (citations omitted) Accordingly, the co-conspirator's statement may be conditionally admitted subject to being "connected up" subsequently by independent proof of conspiracy, which may be totally circumstantial. *United States v. Jackson*, 8 Cir., 549 F.2d 517, 533.

See also 4 Weinstein's Evidence, 801–148 (1977).

■ We are in agreement with the view set forth in these authorities. We held in an analogous case that the order of proof rests in the sound discretion of the trial court, *State v. Best*, S.D., 232 N.W.2d 447. We conclude that the same rule should apply here.

Appellant next argues that there was insufficient corroboration of accomplice Stekloff's testimony to connect appellant with the commission of the offense as required by SDCL 23–44–10. We need not reach the question whether Stekloff's hearsay declarations, testified to by the officers, could be used to corroborate his trial testimony, for we find that there was sufficient corroborative evidence irrespective of those statements. The state agents' testimony established that appellant told them that Stekloff could procure Mexican marijuana for them; that they would have to contact the taxi office about the purchase; that appellant knew the price per pound; that appellant nodded his head when asked if the marijuana was good; and that when told by Stekloff that the agents wished to purchase the marijuana, appellant told Stekloff he would have to get the marijuana from the trunk of his car.

■ The statute does not require that corroborative evidence be produced sufficient to support a conviction. As we said in *State v. Rauscher*, S.D., 267 N.W.2d 582, 583:

The rule is satisfied if such evidence in some substantial degree (1) tends to affirm the truth of the testimony of the accomplice, and (2) tends to establish the guilt of the defendant. *State v. Levers*, 12 S.D. 265, 81 N.W. 294; *State v. Walsh*,

25 S.D. 30, 125 N.W. 295; *State v. Drapeau* [45 S.D. 507, 189 N.W. 305]; *State v. Stecker* [79 S.D. 79, 108 N.W.2d 47]. Circumstantial evidence may be sufficient to corroborate the testimony of an accomplice, *State v. Willers*, 75 S.D. 356, 64 N.W.2d 810 . . . . Where such evidence of corroboration appears, its weight, credibility, and sufficiency is for the jury.

The corroborative evidence in this case was sufficient to support appellant's conviction.

We have considered appellant's remaining contentions and find them to be without merit.

The judgment of conviction is affirmed.

DUNN, C. J., and PORTER and MORGAN, JJ., concur.

ZASTROW, J., concurs in part and dissents in part.

ZASTROW, Justice (concurring in part, dissenting in part).

Although I agree that the trial court acted properly in allowing the defendant to withdraw his guilty plea, I have grave reservations regarding the acceptance of the plea by the court in the first instance. Although the defendant agreed to the plea agreement and his attorney concurred in the entry of the guilty plea, I believe that an agreement of this nature should have been rejected by the trial court.

The plea agreement required the defendant and codefendant Stekloff, after entering guilty pleas but before sentencing, to aid and assist Division of Criminal Investigation agents in making six or eight drug arrests. The satisfactory compliance with this plea bargain was to be determined, not by the state's attorney or the court, but by the DCI agents. The sentencing was to be delayed "for an indefinite period of time," and if the DCI agents were satisfied with the defendant's cooperation, the state would "not oppos[e] the Defendants urging for suspension of imposition of sentence."

In order that "the general public should not be aware of that" the agreement was

presented to the judge in camera and at the arraignment the defendant stated for the public record that no deals or promises had been made. No factual basis for the plea was established.

This court has previously indicated that the trial judge should not be involved in the plea bargaining process. *State v. McConkey*, 1976, S.D., 247 N.W.2d 687; *State v. Doherty*, 1978, S.D., 261 N.W.2d 677. When the plea of guilty is entered as part of a plea agreement, the plea agreement is either to be accepted or rejected by the trial court. If it is accepted, it is to be incorporated into the sentence. If it is rejected, the defendant must be given the opportunity to withdraw his plea. Here there was no final agreement for the court to either accept or reject. The agreement was still contingent upon any number of subjective evaluations of the defendant other than by the court. The trial judge placed himself squarely in the middle of the incomplete plea negotiation process; it appears that the plea was not intended to be an admission of guilt but simply a part of the "cover" for the defendant's future collaboration in the drug investigation.

The trial judge would be well advised to reject these types of agreements, or find himself in the position of later determining whether a defendant was at fault for the failure of the police investigation.[1] Plea agreements whose terms cannot be determined until long after the guilty plea is entered and only before an unduly delayed sentencing should be rejected.

The majority does not discuss whether or not it was error for the trial court to define "marijuana in a processed form." Instead it finds that the failure to propose a written instruction waives any error. If it was error not to instruct on the definition of the phrase, the failure to propose an instruction is not necessary to preserve the question. What is necessary, is that the error in failing to give proper instruction is brought to the attention of the trial court prior to the instructions being given to the jury to allow the trial court to correct it. *State v. Greene*, 1971, 86 S.D. 177, 192 N.W.2d 712; *Schmidt v. Wildcat Cave, Inc.*, 1977, S.D., 261 N.W.2d 114. However, I am unable to find any indication that defendant ever raised the issue of an instruction defining the term at the trial.

I also disagree with the majority's disposition of the conspiracy charge. The elements of a conspiracy are (1) an express or tacit preconceived agreement (2) between two or more persons (3) with a common design or purpose (4) to accomplish an unlawful purpose amounting to a crime. *Marshall v. People*, 1966, 160 Colo. 323, 417 P.2d 491.

The only evidence of a preconceived agreement was the testimony of the "co-conspirator," Stekloff, that he and defendant were in the drug business together. The corroborating evidence introduced by the state does not establish the existence of a preconceived agreement between Stekloff and defendant to distribute drugs. Although it may establish that defendant "aided and abetted" Stekloff in the commission of this particular criminal act, "conspiring" and "aid and abetting" are distinctly different acts as far as criminal responsibility is concerned. *People v. Bazaure*, 1965, 235 Cal.App.2d 21, 44 Cal.Rptr. 831; *People v. Malotte*, 1956, 46 Cal.2d 59, 292 P.2d 517; *People v. Marrone*, 1962, 210 Cal.App.2d 299, 26 Cal.Rptr. 721.

I also question whether the majority's view on the admission of a co-conspirators statements prior to the submission of sufficient corroborative proof of the conspiracy is correct. It appears that the Fifth Circuit Court of Appeals, upon which the majority relies, now requires that the co-conspirators statements not be admitted until the state has introduced sufficient corroborative evidence. *United States v. James*, 5 Cir., 576 F.2d 1121.

---

1. Here the codefendant allegedly spread the word on campus that the defendant was a "narc." However, Stekloff retained the benefit of the agreement by testifying against the defendant. Defendant also alleges that the DCI agent went on vacation shortly after the plea and he had no one to "aid or assist." Later, he alleges the agent would not return his calls or meet him.

I would reverse the conviction for conspiracy to distribute marijuana on the grounds that there was insufficient corroborative evidence of a preconceived agreement between Stekloff and defendant to distribute marijuana. See *People v. Atley*, 1974, 392 Mich. 298, 220 N.W.2d 465. However, because there was sufficient corroborative evidence that defendant participated in this sale, the accomplice's testimony would be admissible to prove beyond a reasonable doubt that defendant aided and abetted in this distribution. Likewise, the corroborative evidence of joint possession was sufficient to allow the testimony of the accomplice to be admitted to prove joint possession beyond a reasonable doubt.