STATE of South Dakota, Plaintiff
and Respondent,

v.

Robert William BROWN, Defendant
and Appellant.

No. 12661.

Supreme Court of South Dakota.

Argued Sept. 12, 1979.

Decided Dec. 5, 1979.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

FOSHEIM, Justice.

The defendant was found guilty of robbery in the first degree and grand theft. He appeals from the judgment based on the verdicts. We affirm.

At approximately 10:15 P.M. on July 8, 1978, the Kentucky Fried Chicken franchise in Yankton was entered by two individuals carrying guns. Each intruder wore blue jeans, flannel shirt, stocking cap, face mask and sun glasses. Jodi Albrecht, an employee on duty, recognized one of the robbers as Douglas Kokesh, a former employee. The robbers took a yellow and a blue money bag which were both labeled "K.F.C." The

bags contained $971.03 in currency and coins. They made their getaway in Ms. Albrecht's car, which was later found abandoned.

Loren Bornitz testified that shortly after 11:00 P.M. on July 8, 1979, he returned to his home and found Larry Kokesh, Douglas Kokesh, Julie Gross, Cindy Hladky, Marlys Bornitz and the defendant in his house. These people all left at about 11:30 P.M. At 11:53 P.M., the police stopped and conducted a limited search of a car occupied by the same six people. Larry Kokesh, the owner of the vehicle, was driving. The vehicle was searched thoroughly at the station house later that night. At approximately 1:30 A.M. on July 9, 1978, officers also conducted a search of the Loren Bornitz home.

Larry Kokesh, a brother of Douglas Kokesh, testified that guns found in his vehicle were owned by members of his family and had been concealed near the Kentucky Fried Chicken establishment by Douglas Kokesh prior to the robbery. He further testified that he and Douglas Kokesh picked up defendant Brown at the Bornitz home on the evening of the crime and that, shortly thereafter, he dropped off his brother and defendant near the Kentucky Fried Chicken location. According to Larry Kokesh, defendant and Douglas Kokesh came to his car at the drive-in theatre at about 10:45 P.M. and asked him to meet them near the cemetery. When defendant and Douglas Kokesh approached his car at the cemetery, they were carrying the Kokesh guns and some money. In addition, Cindy Hladky testified that she was present in Marlys Bornitz' room when she, Douglas Kokesh and defendant counted about $700.00 from two money bags.

■ Defendant claims the trial court erred in not granting his motion for a directed verdict on both counts because of insufficient evidence. Defendant contends that, apart from the testimony of accomplices, the evidence connecting him with the crime is largely circumstantial and not adequate to satisfy the requirements of SDCL 23–44–10,[1] which provided:

A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

As we recently stated in *State v. Moellar*, 281 N.W.2d 271, 273 (S.D.1979), "[t]his statute does not require that corroborative evidence be produced which, by itself, would sustain a conviction." See *State v. Rauscher*, 267 N.W.2d 582 (S.D.1978); *State v. Hicks*, 6 S.D. 325, 60 N.W. 66 (1894). The rule is satisfied if such evidence "in some substantial degree tends to 1) affirm the truth of the testimony of the accomplice, and 2) establish the guilt of the defendant." *State v. Moellar*, supra at 273; *State v. Drapeau*, 45 S.D. 507, 189 N.W. 305 (1922).

■ Loren Bornitz was not an accomplice. His testimony and that of the police officers who searched the car and the house provides corroboration connecting the defendant with the commission of the crime in at least three respects: (1) It shows that at about the time of the commission of the offense, there was a close association between defendant and the accomplices in the area where the crime was committed. Evidence of this nature may sufficiently connect the defendant with the commission of the crime to furnish the necessary corroboration of accomplice testimony. *State v. Moellar*, supra; *State v. Drapeau*, supra; (2) A yellow money bag bearing the letters "K.F.C." along with $112.80 of alleged stolen money was recovered from the Bornitz house where defendant was present two hours earlier. In addition, when the police searched the Kokesh car $270.00 was found in a bundle under the seat in front of where defendant was seated and a blue money bag labeled "K.F.C." was recovered from the

---

1. This statute was repealed by 1978 S.D.Sess.Laws, ch. 178, § 577, effective July 1, 1979. See SDCL 23A–22–8 for similar reenactment.

back seat where defendant was sitting. Also, $30.00 of alleged stolen money was found stuffed in defendant's front pocket; this amount greatly exceeded that which was found in his billfold. In *State v. Moellar*, supra, we quoted with approval from *State v. Vierck*, 23 S.D. 166, 170–71, 120 N.W. 1098, 1100 (1909):

> [R]ecent possession of stolen property whether in larceny or in burglary, and whether such possession be "explained" or "unexplained," is a circumstance—an evidentiary fact—which may have a greater or lesser weight as proof of guilt, when considered with, and strengthened or weakened by, all the other evidence in the case. If the evidence tends to show the possession to be an honest one, the probative force of the fact of recent possession may be greatly modified or entirely destroyed. If wholly unexplained, it may carry a conviction of guilt to the minds of the jury; but, whether explained or unexplained, it is competent and relevant evidence upon the issue of guilt or innocence.

(3) Certain articles and weapons identified with the robbery, namely stocking caps, a towel (such as that used for a face mask), and two guns were found in the trunk of the automobile in which defendant had recently been an occupant. Evidence that an accused possessed, or had access to tools, weapons, implements or other articles with which the robbery was, or might have been, committed is admissible for the purpose of connecting the accused with the crime. *Banning v. United States*, 130 F.2d 330 (6th Cir. 1942), *cert. denied*, 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556 (1943); *People v. Devaney*, 33 Cal.App.3d 630, 109 Cal.Rptr. 276 (1973); *O'Connor v. State*, 123 Neb. 471, 243 N.W. 650 (1932); *People v. Cotton*, 117 Cal.App. 469, 4 P.2d 247 (1931); see also: *Silver v. State*, 110 Tex.Crim.App. 512, 8 S.W.2d 144, 60 A.L.R. 290 (1928); *State v. Barone*, 173 Minn. 232, 217 N.W. 104 (1927); *State v. Colcord*, 170 Minn. 504, 212 N.W. 894 (1927); 67 Am.Jur.2d Robbery § 52 (1973); 77 C.J.S. Robbery § 46(e)(4) (1952).

We conclude, therefore, that there was sufficient corroborating evidence, independent of the testimony of accomplices, connecting the defendant with the commission of the crimes charged to satisfy SDCL 23–44–10. Even though circumstantial in nature, such evidence can satisfy the requirements of corroboration. *State v. Moellar*, supra; *State v. Willers*, 75 S.D. 356, 64 N.W.2d 810 (1954); *State v. Odle*, 45 S.D. 575, 189 N.W. 515 (1922).

Appellant contends that corroboration cannot be found in the testimony of Loren Bornitz because the court erroneously allowed the state to endorse his name on the information at the time of trial contrary to the provisions of SDCL 23–20–4.[2] This statute requires the state's attorney to endorse on the information the names of witnesses known to him at the time of filing the information. It is not error, however, for the trial court to allow the state's attorney to endorse the name of an additional witness at trial where it appears that he did not know of such witness, or that the testimony of that witness would be material when the information was filed. *State v. Morgan*, 42 S.D. 517, 176 N.W. 35 (1920); *State v. Cherrington*, 34 S.D. 562, 149 N.W. 421 (1914). Whether a belated endorsement should be allowed is a matter largely within the discretion of the trial court. *State v. Provost*, 266 N.W.2d 96 (S.D.1978); *State v. Hoover*, 89 S.D. 608, 236 N.W.2d 635 (1975). In the absence of some showing of abuse or bad faith on the part of the state's attorney in deliberately withholding the name, resulting in substantial prejudice to the accused, the allowance will not constitute grounds for reversal. *State v. Provost*, supra; *State v. Fulwider*, 28 S.D. 622, 134 N.W. 807 (1912). The state's attorney explained that it became necessary to endorse Loren Bornitz' name because of the fact that Marlys Bornitz (who resided with Lor-

2. This statute was repealed by S.D.Sess.Laws, ch. 178, § 577, effective July 1, 1979. SDCL 23A–6–10 now expressly provides that additional witnesses may be endorsed with permission of the court where the materiality of such witnesses' testimony is first discovered by the prosecutor during trial.

en Bornitz in the house that was searched) had married defendant prior to trial and would not be able to testify against her new husband. The prosecutor also stated that he was unaware when the information was filed that Loren Bornitz was an occupant of the house. There is no indication of bad faith in this case and we find no error in allowing the endorsement.

Before resting, defense counsel requested permission to introduce into evidence the guilty plea of Douglas Kokesh (who did not testify in this case). The court admitted the evidence over objection of the state, but restricted its further mention to the jury until closing argument. The defendant was not represented by present counsel at the trial. Appellant now argues that such evidence was prejudicial. Apparently, it was the decision of his trial counsel to introduce this evidence so that he could use it in argument to the jury. The plea of guilty by one person of the commission of a crime does not establish the fact that such crime was committed as against any other person, and is not admissible as tending to prove such fact. *State v. Bachelor*, 67 S.D. 259, 291 N.W. 738 (1940). As to a remaining codefendant, the plea is hearsay. *Cranmore v. State*, 85 Wis.2d 722, 271 N.W.2d 402 (1978); see: *United States v. Bryza*, 522 F.2d 414 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976).

The Sixth Amendment to the United States Constitution and art. VI, § 7 of the South Dakota Constitution guarantee to the accused the right to confront the witnesses against him. While the confrontation clause and the hearsay rule protect similar values, it does not follow that hearsay evidence can never be introduced. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *State v. Watts*, 85 S.D. 638, 188 N.W.2d 913 (1971). The accused may waive his right of cross-examination and such waiver may be accomplished by his counsel as a matter of trial tactics or strategy. *United States v. Goldstein*, 532 F.2d 1305 (9th Cir. 1976); *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); *Wilson v. Gray*, 345 F.2d 282 (9th Cir. 1965), *cert. denied*, 382 U.S. 919, 86 S.Ct. 288, 15 L.Ed.2d 234 (1965); see also, *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). Since the guilty plea of Douglas Kokesh was put into evidence at the instance of the defendant, its hearsay character did not involve the right of the defendant to confront the witnesses against him. There is inherent risk involved in the use of trial tactics in our adversary system. This was recognized in *Klose v. United States*, 49 F.2d 177 (8th Cir. 1931), *cert. denied*, 284 U.S. 626, 52 S.Ct. 11, 76 L.Ed. 534 (1931). In that case, the court held that where the appellant himself had brought into the record the fact that a defense witness had been separately tried and acquitted under the same indictment, he was in no position to allege error when the prosecution, in objecting to the competency of such testimony, disclosed that numerous other defendants had been found guilty in that former trial.

If appellant's argument were to prevail, it would mean that toward the end of trial defense counsel could evaluate the evidence and, if his case appeared weak, employ a strategy that might persuade the jury and simultaneously allow him to avoid the consequences of a probable guilty verdict by simply injecting reversible error into the record. If the strategy did not succeed with the jury, it would nevertheless assure a new trial on appeal.

Finally, the unsuccessful use of this trial tactic does not demonstrate that defendant's trial counsel was therefore incompetent as appellant now urges.

We have reviewed the remaining assignments of error and find that they are without merit.

The judgment of conviction is affirmed.

All the Justices concur.